# Richmond.

BIG STONE GAP IRON CO. V. KETRON.

NOVEMBER 19, 1903.

Absent, Buchanan, J.*

1. MASTER AND SERVANT—*Safe Place—Risks Incident to Service.*—A person who voluntarily enters the service of another assumes all the risks usually incident to such employment, and is presumed to have contracted with reference thereto. In the case at bar the risk was of this character, and was open and obvious.

2. MASTER AND SERVANT—*Employment of Surgeon—Duty of Master.*— If a master assumes the responsibility of employing a surgeon to attend his servants, he must use reasonable care in the selection of the surgeon. The presumption is that the master discharged his duty, and the burden is on the servant to prove negligence in selecting and continuing an unfit surgeon.

3. MASTER AND SERVANT—*Incompetent Surgeon Employed by Master— Liability of Master.*—To hold a master liable for the incompetency of a surgeon employed by him, but who is paid by monthly contributions from the servants' wages, to attend his servants, it must be alleged and proved that the injury complained of resulted from the incompetency of the surgeon, and further, that there was a want of reasonable care in his selection, or that he was retained in service after actual notice of his unfitness, or proof of such acts of negligence as would have affected the master with notice had he exercised due oversight and supervision. The act complained of may of itself be sufficient to establish the incompetency, but not the master's knowledge thereof.

4. EVIDENCE—*Competency of Surgeon—Registration as a Physician.*— Whether a surgeon is registered as a physician in the clerk's office of the County Court of the county in which he practices is immaterial on an issue involving his competency as a surgeon.

*Judge Buchanan was detained at home by sickness.

Error to a judgment of the Circuit Court of Lee county, rendered March 9, 1903, in an action of trespass on the case, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

At the time of the accident complained of, the defendant in error was in the employment of the Big Stone Gap Iron Company, in Lee county, and had been in such employment for about two years. He was engaged in digging ore, and, finding difficulty in pushing his car on account of the heavy grade at the point at which he was working, threatened to stop work, when the person acting as superintendent at the mines directed him to another place to work. The defendant in error proceeded to work at the place designated, but discovered that it was dangerous, and that props would be needed. He says that there was an agreement to furnish props with which to brace the banks, and that he notified "the fellows that was cutting the timber" to furnish them, but they failed to do so. He states, further, that he knew that the banks would fall if he did not get the props, and yet he continued the work without them. The defendant in error describes the place of the accident as "just a bank faced up against the side of a hill," out of which he had taken the ore three and a half or four feet. When he had gone in thus far a rock fell on his left leg, breaking it in three places. The physician at the mines was selected by the company and paid from a small monthly contribution of each of the miners. He was called to attend the defendant in error. His connection with the case sufficiently appears from the evidence recited in the opinion of the court.

*Bullitt & Kelly, Curtin & Shelton,* and *R. T. Irvine,* for the plaintiff in error.

*J. C. Noel* and *C. C. Bales,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Defendant in error sued in the Circuit Court of Lee county to recover damages for an injury received by him while in the service of plaintiff in error. His declaration contains two counts. The first count charges that the company was negligent in failing to provide proper support for the roof of a certain iron mine, by reason of which it fell upon the plaintiff, breaking his leg, and doing him other bodily injury. The second count is to recover for the alleged malpractice of the surgeon who attended the plaintiff, after he received the injuries detailed in the first count.

At the trial the defendant demurred to the evidence, and the jury rendered a verdict for the plaintiff for the sum of three thousand dollars, upon which the court entered judgment for the plaintiff, and the defendant obtained a writ of error from one of the judges of this court.

With respect to the evidence upon the first count, it is sufficient to say that the law is well settled, that where a person voluntarily enters the service of another he assumes all the risk usually incident to such employment, and is presumed to have contracted with respect thereto. That the risk in this case was of this character, and that it was open and obvious, appears from the testimony of defendant in error.

The second count presents a question of more interest. The plaintiff's leg was broken in three places—at a point just above the knee, about half way between the knee and the hip, and near the hip joint. He was attended by Dr. Clyde Johnson, who was in the service of the defendant company, which retained out of the wages of each married employee the sum of one dollar per month, and out of the wages of each unmarried employee the sum of fifty cents per month, to pay for medical and surgical attention to the employees and their families. Dr. Johnson set the plaintiff's leg, dressed it, and put it into a

plaster cast, elevated it, attached a pully and weight to it, and then left the injured man in that condition for several days without surgical attention. Dr. Fulkerson was then called in, and it was ascertained that the bandages had loosened, that the fracture at the middle of the left thigh had not knit together properly, and that the leg at that point had twisted and was considerably shorter than the other leg. Dr. Spencer was introduced as an expert, and he testifies that the injury in this case was not treated according to the more recent methods; that the proper practice is to bandage the leg and put plaster of paris upon the bandages until it forms a cast for the limb. The injury in this case he described as a compound comminuted fracture, and the fault consisted in not keeping the leg straight until the bone knit, and that the twist in the leg could have been avoided by skillful treatment. The clerk of Lee county was introduced by plaintiff to show that Dr. Johnson was not registered as a physician in his office, as required by law, the object of the evidence being to show that the company had not used proper care in the selection of a surgeon. We shall not consider the correctness of this ruling further than to say that the evidence was immaterial, and ought not to have been admitted; but we do not think it of sufficient importance, standing alone, to warrant a reversal of the case. We shall, therefore, consider this assignment of error, uninfluenced by that evidence.

It appears that each married employee was required, as we have said, to pay one dollar a month out of his wages, and each unmarried employee the sum of fifty cents a month out of his wages to pay for the services of a physician or surgeon to attend them and their families, as their needs required. There is no evidence that the company derived, or expected, any advantage or profit from the fund so created. In the selection of a surgeon it was the duty of the company to exercise reasonable care, and the presumption is that this duty was performed, in the absence of evidence to the contrary. There is no evidence in

the record with respect to the fitness of Dr. Johnson, except the testimony with respect to his treatment of the injury sustained by the defendant in error.

To hold the company liable for the incapacity of the surgeon, it was necessary to aver and prove (1) that it was guilty of negligence in selecting an unfit surgeon, or (2) if reasonable care was exercised in the selection of a surgeon who afterwards proved to be incompetent, notice of his incompetency by reason of his inherent unfitness, or by previous specific acts of negligence, from which incompetency might be inferred; or (3) either actual notice to the master of such unfitness or bad habits, or constructive notice by showing that the master could have known the facts, had he used ordinary care in oversight and supervision, or by proving general reputation of the surgeon for incompetency or negligence; and (4) that the injury complained of resulted from the incompetency proved.  "The mere fact of the incompetency of a servant for the work upon which he was employed is not enough to warrant a jury in finding the master guilty of negligence in employing him. . . . Evidence of only one other negligent act of the servant in fault is not usually sufficient . . ."  Shearman & Redfield on Negligence, sec. 192; *Meyers* v. *Falk,* 99 Va. 385, 38 S. E. 178.

"If," said the court, in *Secord* v. *St. Paul, &c., Ry. Co.,* 18 Fed. Rep. 221, "the railroad assumes the responsibility of engaging a surgeon, and placing him in charge of parties that may be injured, and sending him to their aid, so that these parties may place themselves under the care of this physician or surgeon, then it is responsible thus far: that the person it selects must be a competent man.  He must be reasonably fitted for the duties which he is called upon to perform. In other words, it will not do for the company to take up some incompetent man, who is not fit, by education or experience, to undertake the responsibilities of any case that may be placed in his hand.  If it does engage a physician and surgeon who is

sufficiently experienced, that is all that can be expected of the railroad company, and is all of its liability.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"Now he may be an ordinarily competent man, and yet in the attendance upon any particular case that he undertakes, he may be negligent. He may be negligent in that particular case, and neglect his duty therein, though he may generally be ordinarily competent. If that be true, and you so find the facts to be in this particular case, that when treating the plaintiff as a physician and surgeon, he was negligent in the performance of his duty—if you should find that from the evidence—then you must determine whether he was a competent man, and was a proper and responsible surgeon for the company to engage as such; and if you find that the company performed its duty in that regard, that is all that could be required of it."

In *Laubheim* v. *Steamboat Co.,* 107 N. Y., at page 228 (13 N. E. 781, 1 Am. St. Rep. 815), it was held that in the absence of evidence of any carelessness or negligence on the part of a steamship company in the selection of a surgeon for one of its steamships, it was not liable for the negligence of the surgeon; that in the performance of such duty it is responsible solely for its own neglect, and not for the negligence of the surgeon; that it is bound to use reasonable care and diligence in the selection of a person reasonably competent, but it is not compelled to select and employ the highest skill and longest experience.

It was the duty of the company, we repeat, to exercise reasonable care in the selection of a surgeon. The presumption is that it discharged this duty, and the burden of proving negligence in selecting or continuing an unfit servant is upon the plaintiff. Shearman & Redfield on Negligence, *supra.*

To hold the company liable for the incompetency of the surgeon, there must be evidence of a want of reasonable care in his selection, or actual notice of his unfitness, or proof of such acts of negligence as would have affected the master with notice

had he exercised due oversight and supervision. The case stands here upon the presumption that the plaintiff in error exercised reasonable care in the selection of the surgeon, of whose negligence complaint is made. The record is silent as to his fitness, except the facts detailed with reference to his treatment of the injuries sustained by the defendant in error, so that there was no notice, actual or constructive, to plaintiff in error of his incompetency for the performance of the duties for which he had been selected, for "the specific negligent act on which the action is founded may, in some cases, but not generally, be such as to prove incompetency, but never can, of itself, prove notice thereof to the master." Shearman & Redfield, *supra.*

We are of opinion that the court should have sustained the defendant's demurrer to the plaintiff's evidence, and it is therefore ordered that the judgment of the Circuit Court be reversed, and that a judgment be entered for the defendant, with costs.

*Reversed.*