# David B. Buchanan

### v.

# John Doe

Record No. 921159

June 11, 1993

Present: All the Justices

*Raymond H. Strople (Moody, Strople & Kloeppel*, on brief), for appellant.

*Kenneth J. Ries (John D. Eure; Johnson, Ayers & Matthews*, on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

This is an uninsured motorist case involving a conflict of laws issue, and we must decide whether our law or West Virginia law controls.

State Farm Mutual Automobile Insurance Company (State Farm) issued an automobile liability policy in Virginia to David B. Buchanan, a resident of Clifton Forge. The policy contained the following uninsured motorist (UM) provision mandated by former Code § 38.1-381, the predecessor of Code § 38.2-2206 (the Virginia UM statute):

> The company will pay in accordance with Section 38.1-381 of the Code of Virginia and all Acts amendatory thereof or supplementary thereto, all sums which the insured . . . shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured or property damage, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle.

■ The Virginia UM statute also provides that if the identity of the uninsured operator is unknown, he may be sued as ''John Doe'' and service of process may be made upon the insurance company ''as though [it] were a party defendant.'' Code § 38.2-2206(E). Physical contact with the John Doe vehicle is not required to maintain this action under Buchanan's policy or Code § 38.2-2206. *John Doe v. Brown*, 203 Va. 508, 516, 125 S.E.2d 159, 165 (1962) (construing the predecessor UM statute, Code § 38.1-381(e)).

Buchanan was injured on June 9, 1989, when a truck forced his car off U.S. Route 220 in West Virginia. There was no contact between the vehicles. Although the truck driver stopped at the scene, he did not identify himself. The truck driver indicated to Buchanan that he would call the police and an ambulance, but he did not return to the scene of the collision. Hence, Buchanan is unaware of the truck driver's identity.

Pursuant to the provisions of his insurance policy and Code § 38.2-2206, Buchanan filed this action in the court below against

the truck driver as "John Doe," seeking damages for his injuries and other losses. Following a stipulation by the parties and Buchanan's answer to State Farm's request for admissions that reflected the facts recited above, State Farm filed a motion for summary judgment. In support of that motion, it relied upon a provision in the West Virginia UM statute that required proof of physical contact with the John Doe vehicle in a John Doe tort action and contended that this requirement was a part of the substantive tort law of West Virginia. [1]

Accordingly, State Farm contended, and the trial court agreed, that Buchanan could not recover from John Doe without proof of physical contact between his vehicle and John Doe's vehicle. Therefore, the court sustained State Farm's motion for summary judgment and entered a "Final Order of Dismissal." Buchanan appeals.

The parties agree that under our conflict of law rules: (1) the law of the place of the wrong determines the substantive issues of tort liability, *Jones v. R.S. Jones & Assocs.*, 246 Va. 3, 5, 431 S.E.2d 33, 34 (this day decided); *McMillan v. McMillan*, 219 Va. 1127, 1128, 253 S.E.2d 662, 663 (1979), and (2) generally, the law of the place where an insurance contract is written and delivered controls issues as to its coverage. *Lackey v. Virginia Sur. Co.*, 209

---

[1] We quote and paraphrase the following pertinent provisions of the West Virginia UM statute.

Nor shall *any [automobile liability insurance] policy or contract be so issued or delivered [in this state]* unless it shall contain an endorsement of provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle.

West Virginia Code § 33-6-31(b) (1992) (emphasis added).

If the owner or operator of any motor vehicle which causes bodily injury . . . to the insured be unknown, . . . *in order for the insured to recover under the uninsured motorist endorsement or provision*, [the insured] shall:

(i) [report the occurrence to designated officials within a limited time after its discovery, unless it shall already have been investigated by the police];

(ii) [notify the insurance company within a limited time after the accident and permit it to inspect the insured's vehicle]; and

(iii) *Upon trial establish that the motor vehicle, which caused the bodily injury . . . whose operator is unknown, was a "hit and run" motor vehicle, [that had physical contact with the insured's vehicle,* and have process served upon the insurance company issuing the UM policy].

West Virginia Code § 33-6-31(e) (1992) (emphasis added).

Va. 713, 715, 167 S.E.2d 131, 133 (1969). The disagreement is whether the West Virginia proof-of-contact requirement is a matter of tort controlled by West Virginia law, or one of contract controlled by Virginia law.

 The forum state applies its own law to ascertain whether the issue is one of tort or contract. *See Forsyth v. Cessna Aircraft Co.*, 520 F.2d 608, 611 (9th Cir. 1975) (law of forum applied to decide if case is one of contract or tort); *Willard v. Aetna Cas. & Sur. Co.*, 213 Va. 481, 482-83, 193 S.E.2d 776, 778 (1973) (law of forum state where UM policy issued that permitted direct action against UM insurer held substantive, not procedural). And, in doing so, the forum state applies a principle described as

> an old technique which has recently acquired the new name of "depecage". This refers to the process whereby different issues in a single case arising out of a single set of facts may be decided according to the laws of different states. This has always been the process when procedural matters were held to be governed by forum law and substantive questions by some other law, even when matters characterized as procedural had substantial outcome-determinative effect. *It has always been understood also that different substantive issues could properly be decided under the laws of different states, when the choice-influencing considerations differ as they apply to the different issues.* The new development in this area is the currently increased discussion and analysis of the old technique.

Robert A. Leflar, *American Conflicts Law* § 109, at 221-22 (3d ed. 1977) (emphasis added) (footnotes omitted).

 Thus, we apply the law of the Commonwealth to determine whether the West Virginia proof-of-contact requirement is a matter of tort or contract. And, we have defined a tort in the following language:

> The word "tort" has a settled meaning in Virginia. "A tort is any civil wrong or injury; a wrongful act (not involving a breach of contract) for which an action will lie." *Jewett v. Ware*, 107 Va. 802, 806, 60 S.E. 131, 132 (1908) (internal quotation marks [and citation] omitted).

"Tort" is also defined as the violation of some duty owing to the plaintiff imposed by general law or otherwise. Generally, the "duty must arise by operation of law and not by mere agreement of the parties." Black's Law Dictionary 1335 (5th ed. 1979). Stated differently, a "tort" is a "legal wrong committed upon the person or property independent of contract." *Id.*

*Glisson v. Loxley*, 235 Va. 62, 67, 366 S.E.2d 68, 71 (1988).

■ On the other hand, a contract is defined as "[a]n agreement between two or more persons which creates an obligation to do or not to do a particular thing." Black's Law Dictionary 322 (6th ed. 1990). Although not expressed in a written contract, a statutory requirement affecting the performance of the contract becomes a part of its terms just as if it had been incorporated therein. *Harbour Gate Owners' Ass'n v. Berg*, 232 Va. 98, 105-106, 348 S.E.2d 252, 257 (1986). However, as noted, the proof-of-contact requirement is contained in the West Virginia UM statute, but not in the Virginia UM statute under which Buchanan's UM policy was issued.

■ With these distinctions in mind, and applying Virginia law, we consider West Virginia's proof-of-contact provision. Substantive tort law in West Virginia, as in Virginia, requires that the plaintiff prove he was injured by the negligence of the defendant. But there is nothing in the tort law of either state which requires that injury be accompanied by physical contact in order to impose liability on the defendant. Under West Virginia law, however, in order to *recover from an insurance company under an uninsured motorist policy*, the injured party must prove in the John Doe tort action that the injury was accompanied by physical contact. But, for several reasons, we conclude that this requirement is a matter of statutory law dealing with insurance contracts.

■ In the first place, this provision imposes no duty upon John Doe, nor is it intended to benefit any tort-feasor who runs another vehicle off the road. Indeed, had the identity of the truck driver been ascertained, and had he been uninsured, proof of contact would not have been required under the West Virginia UM statute. Therefore, we think that the proof-of-contact requirement is a contractual provision imposed by statute and adopted as a method of protecting UM insurers against their insureds' fraudulent UM claims.

█ In Virginia, the General Assembly has employed a different method of protecting UM insurers in John Doe cases by conditioning recovery against such insurers upon a prompt report of the accident to the UM insurer or to law enforcement officials. Code § 38.2-2206(D). And we have held that this protective condition imposes a contractual duty upon the plaintiff having no relation to his John Doe tort action. *John Doe v. Brown*, 203 Va. 508, 515, 125 S.E.2d 159, 164-65 (1962); *Hodgson v. John Doe*, 203 Va. 938, 941, 128 S.E.2d 444, 446 (1962).

█ Secondly, both UM statutes expressly condition recovery in John Doe cases upon compliance with their respective protective provisions. Code § 38.2-2206 provides that "[r]ecovery under the [UM] endorsement or provisions shall be subject to the conditions set forth in this section." West Virginia Code § 33-6-31(e) (1992) provides that "in order for the insured to recover under the [UM] endorsement or provision, [the insured] shall [comply with a number of conditions including that of proof-of-contact]." We do not think what would otherwise be a contractual condition in the proof-of-contact requirement of the West Virginia UM statute is converted into an element of John Doe's breach of duty merely by providing that the contractual condition be fulfilled in the John Doe tort action.[2]

█ Finally, if we construed the proof-of-contact requirement as State Farm suggests, the scope of a Virginia insured's UM coverage would depend upon the UM statutory provisions of each state in which a Virginia insured traveled, contrary to our understanding of the purpose of UM insurance.

> The [UM] endorsement is the contract which the insurance company makes with the insured to protect him against the uninsured motorist. It is protection for which the insured has paid an additional premium and it follows the insured to the place of the accident outside of Virginia, just as the usual indemnity and collision provisions of an automobile insurance

---

[2] We have previously considered other issues involving the UM insurer's contractual liability in John Doe tort actions. *Truman v. Spivey*, 225 Va. 274, 279, 302 S.E.2d 517, 519 (1983) (John Doe and later discovered uninsured motorist held to be same party for purposes of statute of limitations because UM carrier's contractual liability is the same whether the uninsured motorist is known or unknown); *Hodgson*, 203 Va. at 943, 128 S.E.2d at 447 (venue in John Doe tort action determined under general venue statutes as if action were against insurer in order to "permit the plaintiff to have the protection for which he has paid").

policy follow the car and protect the operator wherever the accident may occur.

The liability under the statutory endorsement exists even though the accident happened in a State which has no uninsured motorist law like that of Virginia. Such liability, however, would be rendered unenforceable and worthless if the basic action against John Doe may be brought only where the accident happened and the State where it happened has no provision for such an action.

*Hodgson*, 203 Va. at 942-43, 128 S.E.2d at 447.

■ Since Buchanan's UM policy was issued and delivered to him in Virginia where he resided, it is governed by Virginia law. *Lackey*, 209 Va. at 715, 167 S.E.2d at 133. Hence, the West Virginia proof-of-contact requirement is inapplicable in this action.

For these reasons, we conclude that the trial court erred in sustaining State Farm's motion for summary judgment. Therefore, we will reverse the "Final Order of Dismissal," and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*

JUSTICE LACY, concurring.

While conflict of laws principles may be articulated clearly and without ambiguity, this case demonstrates that the application of those principles is neither simple nor direct. There is no disagreement that Virginia law is applied to determine whether the issue is one of tort or of contract, and which substantive law applies in either instance. The majority and the dissent cite case law to support their respective views, reaching mutually exclusive outcomes that each maintains is the only outcome possible. This result underscores the difficulty of resolving conflict of laws issues and I cannot agree that based on a reading of the prior authority either result is so clearly apparent.

The dissent finds that we are required to consider this solely as a tort action under *Doe v. Brown*, 203 Va. 508, 125 S.E.2d 159 (1962), disregarding the Court's recognition in *Doe* that certain statutory and policy conditions, including notice and proof of physical contact requirements, were requisites of coverage and that coverage

issues were matters of contract. *Id.* at 515, 125 S.E.2d at 164-65. The majority, on the other hand, does not address the precedential value of the *Doe* decision when the Court makes its threshold determination whether the issue at hand is one of tort or contract.

Citing *Perkins* v. *Doe*, 350 S.E.2d 711 (W.Va. 1986), the dissent asserts that West Virginia clearly considers the physical contact requirement to be an element of its substantive tort law in cases of this type. However, in 1988, the West Virginia Supreme Court found, in a choice of law situation analogous to the case before us, that the provision was contractual by nature. *Lee* v. *Saliga*, 373 S.E.2d 345, 348-49 (W.Va. 1988).

In *Lee* a Pennsylvania resident, injured in an automobile accident in West Virginia, brought a tort action against John Doe and others. Under West Virginia's question certification procedure, the Supreme Court considered whether the enforceability of the physical contact provision of West Virginia law should be "determined by the law of West Virginia, the situs of the accident, or of Pennsylvania, the situs of the insurance policy and the residence of the insured." *Id.* at 347. Recognizing that "uninsured motorist cases may raise questions of both tort and contract law," *id.* at 349, the West Virginia Court concluded that the contact requirement was governed by the law of the place of the insurance contract, a state which, like Virginia, did not require proof of physical contact to recover in a John Doe action. *Id.* at 350. The Court acknowledged the apparent inconsistency between *Perkins* and *Lee*, but noted that the only question certified to it in *Perkins*, was whether Virginia or West Virginia tort law applied. It stated that, in *Perkins*, it did not, as in *Lee*, decide whether tort or contract law applied. *Id.* at 349. Accordingly, that Court said that *Perkins* did not control the issues presented in *Lee*. *Id.*

Review of *Doe*, *Perkins*, and *Lee*, along with the other cases cited by the majority and the dissent, does not, in my opinion, lead to the inevitable result asserted by either. I do, however, believe that an important policy consideration forms a more persuasive and conclusive basis for reaching the majority result.

Even if, arguendo, this case involved only tort issues and West Virginia's substantive tort law (including the physical contact requirement) was applicable, Virginia conflict of law principles do not require that we necessarily apply the West Virginia provisions. "Comity does not require application of another state's substantive law if it is contrary to the public policy of the forum state." *Willard*

v. *Aetna Cas. & Sur. Co.*, 213 Va. 481, 483, 193 S.E.2d 776, 778 (1973).

In my opinion, applying West Virginia law to bar a Virginia resident from establishing the negligence of a John Doe motorist and recovering under the uninsured motorist provisions of an automobile liability policy solely because there was no physical contact between the vehicles is contrary to a significant public policy of this Commonwealth, as reflected in a broad range of Virginia's motor vehicle statutes, rules and regulations. Those statutes include the General Assembly's enactment of the uninsured motorist insurance coverage provisions of the Code. Code § 38.2-2206. These provisions mandate policy coverage to protect non-negligent motorists injured by the acts of negligent, but uninsured, motorists. The General Assembly specifically has extended this protection to Virginia insureds who are injured by negligent unknown motorists.

To restrict the Virginia insured's recovery against unknown motorists by imposing the physical contact rule punishes those drivers who attempt to avoid such contact, defeating the broader public policy to encourage safe driving. Applying the rule also places Virginia insureds at risk from negligent uninsured motorists whenever they leave the Commonwealth and subjects them to the requisites for recovery under the uninsured motorist provisions of each state in which they travel. Thus, they lose the full contractual benefits of their Virginia insurance policies, despite Virginia's articulated policy of protecting Virginia insureds against unknown, uninsured motorists whose negligence causes them injury.

I note that, in light of those recognized policy interests, this Court repeatedly has found that the uninsured motorist provisions must be construed broadly to provide the remedy they were intended to provide. *See, e.g., Nationwide Mut. Ins. Co.* v. *Sours*, 205 Va. 602, 606, 139 S.E.2d 51, 54-55 (1964); *State Farm Mut. Auto. Ins. Co.* v. *Brower*, 204 Va. 887, 892, 134 S.E.2d 277, 281 (1964). Further, if the accident had occurred in Virginia, there would be no question of Buchanan's right to proceed to establish John Doe's liability for his injuries. Indeed, if Buchanan had filed suit in West Virginia, based on the facts before us here, the courts of that state would not have applied the physical contact rule to bar his action. To preclude his suit here based on an unfortunate combination of *lex loci* and *lex fori*, in light of the policies involved, is dictated neither by choice of law rules nor the principles of comity.

Accordingly, I concur in the result reached by the majority and would reverse the decision of the lower court.

CHIEF JUSTICE CARRICO concurs in the result.

JUSTICE COMPTON, with whom JUSTICE STEPHENSON joins, dissenting.

In June 1989, David B. Buchanan, a resident of the Commonwealth of Virginia, was injured while driving a motor vehicle in the State of West Virginia. Another motor vehicle, operated by an unknown driver, allegedly ran Buchanan's vehicle off the road. There was no physical contact between Buchanan's vehicle and the vehicle operated by the unknown driver.

In April 1991, Buchanan filed the present action in the court below naming ''John Doe'' as defendant. The plaintiff alleged that Doe was negligent in several particulars and that plaintiff was injured as the ''direct and proximate result of the defendant's negligence.'' The plaintiff sought an award of damages against Doe in the amount of $100,000.

In accordance with the Virginia uninsured motorist statute, the plaintiff served process upon the insurer that had issued a policy of bodily injury liability insurance with an uninsured motorist endorsement covering the plaintiff's vehicle. Code § 38.2-2206(E). The insurer filed a responsive pleading in its own name generally denying the allegations of the motion for judgment.

Subsequently, in responses to requests for admissions, the plaintiff admitted that at the time of the alleged accident ''no physical contact occurred between the motor vehicle driven by the plaintiff and the motor vehicle driven by the unknown operator.'' The insurer, in the name of John Doe as authorized by Code § 38.2-2206(E), then filed a motion for summary judgment. Upon consideration of the pleadings, the insurance policy, the responses to requests for admissions, and the argument of counsel, the trial court sustained the motion for summary judgment and dismissed the action.

This appeal presents an uncomplicated issue. Upon a proper application of settled law, the judgment of the trial court should be affirmed.

The case can be summarized very simply. This is a tort action seeking a money judgment based on negligence. Because the tort

was committed outside Virginia, courts of the Commonwealth apply the traditional conflict of laws rule that the substantive tort law of the place of the wrong governs the Virginia action. The substantive West Virginia tort law required a plaintiff to prove physical contact between a John Doe vehicle and the vehicle or person of the plaintiff. Because the alleged tort involved no physical contact and because the applicable West Virginia substantive tort law precluded recovery against a John Doe defendant absent a showing of physical contact, the trial court correctly ruled that no material fact was genuinely in dispute, Rule 3:18, and that defendant was entitled to summary judgment.

Until today, Virginia law supporting the foregoing analysis has been clearly established. Unquestionably, this is a tort action, not a contract action. Pertinent to this case, 31 years ago this Court stated: "This is not an action arising *ex contractu* to recover against the insurance company on its [uninsured motorist] endorsement. The insurance company is not a named party defendant and judgment cannot be entered against it in this action. This is an action *ex delicto*, since the cause of action arises out of a tort, and the only issues presented are the establishment of legal liability on the unknown uninsured motorist, John Doe, and the fixing of damages, if any." *Doe* v. *Brown*, 203 Va. 508, 515, 125 S.E.2d 159, 164 (1962). *See* Code § 38.2-2206(H) ("nor may anything be required of the insured [plaintiff making a claim under the uninsured motorist endorsement] except the establishment of legal liability"). *Accord Truman* v. *Spivey*, 225 Va. 274, 278, 302 S.E.2d 517, 519 (1983).

And, the plaintiff's right "to bring this action to establish legal liability on the uninsured motorist and to recover damages is not given by the endorsement but by the [uninsured motorist] statute." *Doe*, 203 Va. at 516, 125 S.E.2d at 165. Indeed, the contractual obligation of an insurer providing uninsured motorist coverage arises only after the legal liability of the uninsured "John Doe" has been established by a tort judgment. *State Farm Mut. Auto. Ins. Co.* v. *Kelly*, 238 Va. 192, 195, 380 S.E.2d 654, 656 (1989); *Willard* v. *Aetna Casualty & Sur. Co.*, 213 Va. 481, 482, 193 S.E.2d 776, 778 (1973).

The next inquiry becomes whether Virginia or West Virginia law is to be applied in this tort action. "In resolving conflicts of laws, the settled rule in Virginia is that the substantive rights of the parties in a multistate tort action are governed by the law of the place

of the wrong." *McMillan* v. *McMillan*, 219 Va. 1127, 1128, 253 S.E.2d 662, 663 (1979). *Accord Jones* v. *R.S. Jones & Assocs.*, 246 Va. 3, 431 S.E.2d 33 (1993), decided today.

Because the place of the wrong in this case was West Virginia, the final task must be to determine the West Virginia substantive law governing John Doe tort actions. West Virginia's statutory scheme creating a system for recovering damages caused by an uninsured motorist is similar to Virginia's system. *See* W. Va. Code § 33-6-31 (1992). As in Virginia, an insured under a West Virginia uninsured motorist endorsement who has been injured by an unknown motorist must first bring a John Doe action to establish Doe's legal liability to the insured. Under the West Virginia statute, the uninsured motorist coverage applies only to sums that the insured "shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." W. Va. Code § 33-6-31(b). Paralleling the decisions of this Court, the Supreme Court of Appeals of West Virginia has held that the John Doe action initiated by a plaintiff under an uninsured motorist endorsement is an action in tort. *Perkins* v. *Doe*, 350 S.E.2d 711, 713 (W. Va. 1986).

There is one significant difference, however, between West Virginia's uninsured motorist statute and Virginia's. West Virginia's statute specifies that John Doe is liable only if there has been physical contact between the John Doe vehicle and the insured or with the vehicle the insured was occupying at the time of the accident. W. Va. Code § 33-6-31(e)(iii). And the West Virginia Court has characterized this statutory requirement of contact as a rule of substantive tort law governing West Virginia accidents. *Perkins*, 350 S.E.2d at 714 n.3.

The concurring opinion misconstrues *Lee* v. *Saliga*, 373 S.E.2d 345 (W. Va. 1988), by asserting the case involves "a choice of law situation analogous to the case before us." The case is not at all analogous.

In *Lee*, a Pennsylvania resident who was insured under a Pennsylvania insurance policy was injured in a no-contact accident in West Virginia allegedly caused by John Doe. Pennsylvania, unlike Virginia or West Virginia, is a "direct action" state and allows a direct action against the insurer by one claiming uninsured motorist benefits. *Id.* at 348. The insurance contract contained a physical contact requirement that was invalid under Pennsylvania law but valid under West Virginia law.

The West Virginia court construed the issue in the case as a contractual question relating to policy coverage, and not a tort question dealing with Doe's legal liability. Thus, the West Virginia court analyzed the case under contract principles, applying the law of the state where the contract was issued. The West Virginia court expressly distinguished *Perkins* on the basis that *Lee* involved a contract question while *Perkins* had involved a tort issue. *Id.* at 349.

While distinguishing *Perkins*, the West Virginia court in *Lee* nevertheless reaffirmed that a " 'John Doe' suit . . . is deemed to sound in tort," as previously explained in *Perkins*. *Lee*, 373 S.E.2d at 348. The West Virginia court in *Lee* also reasserted that the insured in a "John Doe" suit must be "legally entitled to recover" from the uninsured motorist before the insurer will be required to pay. *Id.* As previously discussed, an insured is not "legally entitled to recover" from the John Doe defendant under West Virginia's substantive tort law unless the insured can prove physical contact.

Because the present case is a tort action governed by the substantive law of West Virginia, and because there was no physical contact between the vehicles involved in this accident, I believe the trial court correctly decided that the defendant was entitled to summary judgment. Thus, I would affirm.

The decision to reverse the judgment below stems from the plurality's unfortunate refusal to accept the clear, settled law in this Commonwealth that this is a tort action, not a contract action.