PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

KRISTIN D. BLAIR,
    *Plaintiff-Appellant,*

v.                                        No. 03-1280

DEFENDER SERVICES, INCORPORATED,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, Senior District Judge.
(CA-02-601-7)

Argued: December 3, 2003

Decided: October 25, 2004

Before WIDENER and KING, Circuit Judges, and
Richard D. BENNETT, United States District Judge
for the District of Maryland, sitting by designation.

_____

Affirmed in part, reversed in part, and remanded by published opinion. District Judge Bennett wrote the opinion, in which Judge King concurred. Judge Widener wrote an opinion concurring in part and dissenting in part.

_____

## COUNSEL

**ARGUED:** Monica Taylor Monday, GENTRY, LOCKE, RAKES & MOORE, Roanoke, Virginia, for Appellant. John Dickens Eure, JOHNSON, AYERS & MATTHEWS, Roanoke, Virginia, for Appel-

lee. **ON BRIEF:** S.D. Roberts Moore, Andrew E. Carpenter, GEN-TRY, LOCKE, RAKES & MOORE, Roanoke, Virginia, for Appellant. Brian J. Brydges, JOHNSON, AYERS & MATTHEWS, Roanoke, Virginia, for Appellee.

## OPINION

BENNETT, District Judge:

Plaintiff Kristin D. Blair, a Virginia resident, brought this action against Defender Services, Inc. ("Defender"), a South Carolina Corporation, for injuries sustained as a result of a violent attack upon her by James Lee Harris, an employee of Defender. Alleging claims against Defender for negligent hiring, retention and supervision and for *respondeat superior* liability, Blair filed a complaint in the Circuit Court for the City of Roanoke, Virginia. The case was duly removed to the United States District Court for the Western District of Virginia on the basis of diversity of citizenship, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. Subsequently, the District Court granted Defender's motion for dismissal as to the negligent supervision count, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Upon the conclusion of discovery, Defender moved for summary judgment as to the remaining three claims. The District Court entered summary judgment for Defender on all three counts, and Blair now appeals. We affirm the decision of the District Court as to *respondeat superior* liability, but reverse that court's entry of judgment for Defender on the claims of negligent hiring and negligent retention, and remand this case for further proceedings consistent with this opinion.

## I.

This Court reviews a grant of summary judgment *de novo* and applies the same standard as the District Court. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991), *cert. denied,* 502 U.S. 1095 (1992); *Baber v. Hospital Corp. of America*, 977 F.2d 872,

---

[1]The Plaintiff/Appellant has not appealed the District Court's dismissal of the negligent supervision claim.

874 (4th Cir. 1992). Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, interrogatories and affidavits . . . show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." We have previously noted that, when "the moving party has met its responsibility of identifying the basis of its motion, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *White v. Rockingham Radiologists, Ltd.*, 820 F.2d 98, 101 (4th Cir. 1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In its review, this Court must view such facts and all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is such that a reasonable jury could return a verdict for the non-moving party" then a dispute over a material fact is genuine. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In conducting this analysis, this Court recognizes that the instant action was filed in Virginia state court and removed to federal court based upon diversity of citizenship. Accordingly, the choice of law of Virginia applies. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). In evaluating the facts in the light most favorable to the non-moving party, we will apply Virginia substantive law consistent with Virginia's *lex loci delicti*, the law of the place of the wrong. *See, e.g.*, *Jones v. R. S. Jones & Assocs.*, 246 Va. 3, 431 S.E.2d 33, 34, 9 Va. Law Rep. 1410 (Va. 1993); *Buchanan v. Doe*, 246 Va. 67, 431 S.E.2d 289, 291, 9 Va. Law Rep. 1446 (Va. 1993).

## II.

On the morning of March 26, 2001, at approximately 11:30 a.m., Kristin D. Blair ("Blair"), a 19-year-old college freshman at Virginia Polytechnic Institute and State University ("Virginia Tech"), entered the digital art classroom in Henderson Hall on the Virginia Tech campus to work on a project prior to the commencement of a 2:00 p.m. class session. When Blair arrived, other students were completing a class in the room. By 12:30 p.m., all but a few of these students had departed. Around that time, a man wearing blue jeans and a gray t-shirt with a colorful logo entered the room and soon departed. A few

minutes later, that same man returned and asked Blair, who was now alone in the classroom, when the next class started.

At approximately 12:45 p.m., Blair left the classroom and observed the same man standing in the middle of the hallway, with a large gray bucket beside him. After walking to the end of the hallway, Blair entered a unisex bathroom. When she opened the restroom door to leave, the same man was standing in the doorway. Suddenly, this individual grabbed Blair by her neck and pushed her back into the bathroom. While straddling Blair and using both hands to strangle her, the attacker pushed her to the floor. Blair lost consciousness during the attack. She awoke on the bathroom floor, with her face swollen to the extent that she only could see out of one eye.[2] Blair then left the bathroom and began screaming for help. A member of the Virginia Tech administrative staff approached her and asked, "who did this?". Blair pointed to the same man whom she had seen earlier, and who was standing in the hallway.

The man identified by Blair was James Lee Harris, an employee of Defender, which, pursuant to a contract, provided janitorial staffing services on Virginia Tech's campus.[3] Eleven months prior to his attack on Blair, a protective order had been issued against Harris in the Giles County Juvenile and Domestic Relations Court.[4] This pro-

---

[2]There was no evidence of any sexual assault. Blair suffered broken facial bones and subsequently underwent neck surgery. Since the incident, she has attempted suicide and has been diagnosed with Post Traumatic Stress Disorder.

[3]The present record of this case indicates that Harris has denied that he attacked Blair. Defender has not admitted that Harris was the attacker, but has recognized that Blair's evidence on this issue is strong. (Appellee Br. at 2 n.1). In her brief to this Court, Blair has indicated that Harris was criminally charged and entered a plea of "nolo contendere." (Appellant Br. at 5). The Joint Appendix indicates that Harris was charged criminally. (J.A. at 329). As the District Court noted, it assumed for the purposes of summary judgment that such factual disputes are to be resolved in Blair's favor. (J.A. at 331).

[4]Giles County is the neighboring county to Montgomery County, in which Virginia Tech is located. The protective order was entered on April 2, 2000, and listed Harris' home address in the town of Narrows,

tective order resulted from a criminal complaint having been filed by a woman who had been physically assaulted by Harris at a restaurant.

Harris previously had worked for Defender during a brief period from November 1998 until January 1999. At that time, Defender required Harris to complete an application that included a question concerning any criminal charges, to which Harris answered that he had no prior criminal convictions. Pursuant to a contract with Virginia Tech, Defender assigned Harris to perform custodial work at Virginia Tech under Virginia Tech's supervision. That contract required Defender to perform criminal background checks on all Defender personnel assigned to the Virginia Tech campus. A criminal background check of Harris was not completed by Defender during this two-month period.

In January of 1999, Harris quit his employment with Defender, and became employed directly by Virginia Tech for approximately one year. Harris returned to the employment of Defender for a brief two weeks in October of 2000. Once again Harris completed another application and indicated no criminal convictions. Defender did not conduct a criminal background check with respect to Harris during this second brief period of employment.

On February 5, 2001, Defender once again hired Harris. Unlike Harris' prior employment with Defender, he was not required to complete any application on this third occasion. As with the previous occasions, Defender did not conduct a criminal background check on Harris prior to his employment. Defender's representatives did, however, contact some of the personal references provided by Harris. While Harris did not have a record of any criminal convictions, he was subject to the aforementioned court protective order in neighboring Giles County.

---

which is located in Giles County. Harris resided in Pembroke, also located in Giles County, at the time of his initial application for employment in 1998 (JA 128). His application for employment in October 2000 (JA 222), listed an address in the town of Ripplemead, which is also located in Giles County.

At all times, the contract between Defender and Virginia Tech specifically required Defender to perform criminal background checks on all personnel assigned to Virginia Tech property. Expert testimony offered in opposition to Defender's motion for summary judgment presented the view that Defender's pre-employment screening of Harris was inadequate. Specifically, there was evidence that Defender would have discovered that Harris was the subject of a protective order and criminal complaint in the neighboring county if a background investigation had been conducted as required.

III.

A.   *The* Respondeat Superior *Claim*

The Supreme Court of Virginia in the cases of *Gina Chin & Assocs. v. First Union Bank*, 260 Va. 533, 537 S.E.2d 573 (Va. 2000), and *Majorana v. Crown Cent. Petroleum Corp.*, 260 Va. 521, 539 S.E.2d 426 (Va. 2000), both decided on the same day and authored by Justice Lawrence L. Koontz, Jr., addressed the elements of a claim against an employer for the wrongful acts of an employee based on the doctrine of *respondeat superior*. In *Gina Chin*, the court noted that "(a)lmost from its first consideration by the courts of this Commonwealth . . . the determination of the issue [of] whether the employee's wrongful act was within the scope of his employment under the facts of a particular case has proved 'vexatious.'" 537 S.E.2d at 576-577 (citations omitted). In *Majorana*, the court explained that:

> When the plaintiff presents evidence sufficient to show the existence of an employer-employee relationship, she has established a *prima facie* case triggering a presumption of liability . . . the burden of production then shifts to the employer, who may rebut that presumption by proving that the employee had departed from the scope of the employment relationship at the time the injurious act was committed.

539 S.E.2d at 429 (citations omitted).

The District Court correctly viewed all facts in the light most favorable to Blair in assuming that Harris was an employee of Defender at the time of the attack on March 26, 2001. This Court concurs that Blair has met her burden in presenting sufficient evidence that Harris was an employee of Defender. However, any presumption of liability may be rebutted by proof that Harris had departed from the scope of that employment.

Even viewing the facts in the light most favorable to Blair on this issue, we find that the District Court correctly concluded that Harris' actions had nothing to do with his performance of janitorial services. The District Judge thoroughly reviewed applicable Virginia law in reaching this conclusion.

It is well established that the simple fact that an employee is at a particular location at a specific time as a result of his employment is not sufficient to impose *respondeat superior* liability on the employer. *Cary v. Hotel Rueger, Inc.*, 195 Va. 980, 81 S.E.2d 421, 424 (Va. 1954). However, as the District Court noted, Virginia Courts have not "automatically" placed intentional torts "outside the scope of employment for purposes of vicarious liability." *See, e.g., Davis v. Merrill*, 133 Va. 69, 112 S.E. 628, 630-32 (Va. 1922). The District Judge correctly noted that the test set forth in the *Gina Chin* case is whether "the service itself, in which the tortious act was done, was within the ordinary course of the employer's business." *Gina Chin,* 537 S.E. 2nd at 579.

In *Gina Chin, supra,* the Supreme Court of Virginia noted its earlier opinion in *Kensington Associates v. West*, 234 Va. 430, 362 S.E.2d 900, 4 Va. Law Rep. 1269 (Va. 1987). In that case, the court reversed a jury verdict in favor of a plaintiff-construction worker, and entered final judgment in favor of the employer of an individual who had engaged in "horseplay" in shooting the plaintiff. 362 S.E.2d at 903-04. The court noted that this horseplay was not done to further the employer's interest, and also noted its earlier opinion in *Abernathy v. Romaczyk*, 202 Va. 328, 117 S.E.2d 88 (Va. 1960). *Id.* In *Abernathy*, the court reversed a jury verdict and held "as a matter of law" that a delivery man was not acting within the scope of his employment when he participated in a scuffle over who had caused a traffic accident. 117 S.E.2d at 92-93.

The present case falls within the ambit of these Virginia cases. Harris' assault on Blair is clearly distinguishable from situations where the employee's wrongful conduct was related to the nature of the employment. In the *Gina Chin* case, a bank teller embezzled money, while in the *Majorana* case, a gas station employee sexually harassed a customer during payment by the customer. When Harris embarked on independent acts to attack Blair, he clearly acted outside the scope of his employment. We hold that this act was so great a deviation from Defender's business that the District Court correctly granted Defender's motion for summary judgment on the *respondeat superior* liability claim as a matter of law.

B.  *The Negligent Hiring and Negligent Retention Claims*

The recognition of claims for negligent hiring and negligent retention can be traced in Virginia case law to the opinion of the Supreme Court of Virginia in *Big Stone Gap Iron Co. v. Ketron*, 102 Va. 23, 45 S.E. 740, 102 Am. St. Rep. 839 (Va. 1903). *See Courtney v. Ross Stores, Inc.*, 1998 Va. Cir. LEXIS 143, 45 Va. Cir. 429, 430 (1998) (tracing history of negligent hiring and retention under Virginia state law). In *Big Stone*, the court recognized a duty of a company to exercise "reasonable care" in a hiring decision, and a distinction between the hiring and the retention of an employee. 45 S.E. at 741. Subsequently, the Supreme Court of Virginia explicitly recognized the independent torts of negligent hiring in *Davis v. Merrill*, 133 Va. 69, 112 S.E. 628 (Va. 1922), and negligent retention in *Norfolk Protestant Hospital v. Plunkett*, 162 Va. 151, 173 S.E. 363 (Va. 1934).

In *J. v. Victory Tabernacle Baptist Church*, 236 Va. 206, 372 S.E.2d 391, 393, 5 Va. Law Rep. 637 (Va. 1988), the Virginia Supreme Court held that allegations of negligent hiring had set forth a cause of action under Virginia law. In that case, the mother of a ten-year-old girl brought suit against a church and its pastor as a result of the rape and sexual assault of the girl by an employee of the church. *Victory Tabernacle*, 372 S.E.2d at 392. It was alleged that when the church hired this employee it "knew, or should have known, that [the employee] had recently been convicted of aggravated sexual assault on a young girl, that he was on probation for the offense, and that a condition of his probation was that he not be involved with children." *Id.*

The defendants filed a *demurrer*, contending that the plaintiff had failed to state a cause of action. *Id.* The Supreme Court of Virginia specifically addressed "only whether the allegations of negligent hiring . . . state a cause of action in Virginia." *Id.* at 392-393. In reversing the trial court's granting of a *demurrer* on this question, the court held that the plaintiff had asserted a claim of negligent hiring, distinct from a claim for *respondeat superior* liability. *Id.* The court discussed at length its earlier opinion in *Davis v. Merrill*, *supra*, noting that when the wrongdoing employee in that case "was interviewed . . . no one made inquiry concerning his past record, habits, or general fitness," and further commented to the effect that "had [the employer] investigated, it probably would not have offered the assailant the job." *Id.* at 393.

In the instant case, the District Court found that "no reasonable trier of fact" could find that Defender knew or should have known of Harris' criminal problems in the neighboring county some eleven months earlier. We respectfully disagree. There is a genuine issue of material fact with respect to whether Defender should have known of Harris' violent conduct, as the undisputed facts are that Defender never conducted any type of criminal background check on Harris prior to employing him. While Defender can certainly argue that such a background check would not have resulted in the discovery of the protective order issued in April 2000, and a jury could certainly so find, there is expert testimony proffered by Blair that a background check would have indicated the existence of a protective order resulting from a criminal complaint.

The trial court and Defender placed great reliance on the Virginia Supreme Court's opinion in *Southeast Apts. Mgmt., Inc. v. Jackman*, 257 Va. 256, 513 S.E.2d 395 (Va. 1999). In that case, a tenant was molested by a maintenance person of the apartment building after his entry into her apartment. The tenant claimed that the owner of the apartment building breached its duty "to exercise reasonable care in the hiring of its employee . . . or . . . in the retention of the employee." 513 S.E.2d at 395-396. The court noted its earlier opinions in *Victory Tabernacle, supra,* and *Davis v. Merrill, supra,* in establishing the tort of negligent hiring. In providing further edification of this tort, the court cited the following summary provided by a Minnesota state court:

> Liability is predicated on the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, because of the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others.

*Id.* at 397 (citing *Ponticas v. K.M.S. Inv.*, 331 N.W.2d 907, 911 (Minn. 1983)).

In the *Southeast Apts.* decision, the Virginia Supreme Court further noted its recognition of the tort of negligent retention in its earlier opinion in *Philip Morris, Inc. v. Emerson,* 235 Va. 380, 368 S.E.2d 268, 4 Va. Law Rep. 2568 (Va. 1988). The court in *Southeast Apts.* stated that the tort of negligent retention was based "on the principle that an employer owning leased premises is subject to liability for harm resulting from the employer's negligence in retaining a dangerous employee who the employer knew or should have known was dangerous and likely to harm tenants." 513 S.E.2d at 397. Similarly, this Court recognized this principle of Virginia law in our opinion in *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 269 (4th Cir. 2001).

In applying the above principles to the facts before it, the court in *Southeast Apts.* held that the evidence was "insufficient to make out a *prima facie* case of negligent hiring or negligent retention." 513 S.E.2d at 397. The facts presented in *Southeast Apts.* were that the owner had "received a detailed application containing information about [the employee's] personal background, work experience, and behavioral history." *Id.* In responding to the application inquiry, the employee denied any engagement in "34 types of criminal behavior, except traffic violations." *Id.* Furthermore, he denied any criminal convictions "in the past seven years." *Id.* In addition to the thorough steps taken by the employer, the evidence in *Southeast Apts.* indicated that the wrongdoing employee had two previous bad-check charges totaling $10.29. *Id.* Importantly, there were no criminal convictions or protective orders involving violent acts perpetrated on women. *Id.*

The facts in the instant case are clearly distinguishable from those found in *Southeast Apts.*, and are much closer to the facts addressed

by the Supreme Court of Virginia in *Victory Tabernacle*, *supra.* In the present case, Defender failed to conduct a background check of Harris on three different occasions. It is undisputed that Defender was contractually obligated to Virginia Tech to conduct a background check of employees such as Harris. Furthermore, the instant record includes the statement of Virginia Tech's Director of Housekeeping, who indicated that he would not have allowed Harris to perform janitorial services at Virginia Tech had he known of Harris' propensity for violence.

With respect to Blair's claim of negligent hiring, we find that there is a genuine issue of material fact concerning whether Harris' violent propensities should have been discovered by Defender prior to Harris being placed into an employment situation in which he posed a threat to Virginia Tech students. Similarly, in addressing Blair's claim of negligent retention, we find that there is a genuine issue of material fact regarding whether Defender, having originally employed Harris, should have known or discovered Harris' dangerous propensities as a result of the protective order issued eleven months earlier. Quite simply, based on the facts of the instant case, these are questions to be resolved by the jury as the finder of fact.

For the foregoing reasons, we affirm the District Court's granting of summary judgment on the *respondeat superior* claim, but vacate the District Court's order granting summary judgment on Blair's claims of negligent hiring and negligent retention, and remand this case for further proceedings consistent with this opinion.

*AFFIRMED IN PART, REVERSED*
*IN PART, AND REMANDED*

WIDENER, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent. While I agree with the result reached by the majority which affirms the district court's grant of summary judgment on the *respondeat superior* claim, I am of opinion that the district court's order granting summary judgment to Defender Services on Miss Blair's claims of negligent hiring and negligent retention should be affirmed, as well.

The district court correctly found that,

> [g]iven that prevailing Virginia law does not obligate an employer who has asked about criminal history and been told that none exists and who has no reason to suspect a criminal record to investigate prior criminal record "in the exercise of reasonable care," no reasonable trier of fact could hold Defender Services negligent for not making the far more detailed background search that might have brought a temporary restraining order to light.

(quoting *Southeast Apartments Management, Inc. v. Jackman*, 257 Va. 256, 261, 513 S.E.2d 395, 397 (1999)). District Court Slip op. at 7-8. Therefore, I would affirm all the findings of the district court.

The majority relies on "expert testimony proffered by Blair that a background check would have indicated the existence of a protective order resulting from a criminal complaint." Slip op. at 9. The expert testified in an affidavit that the emergency protective order "should have been discovered by a reasonable background investigation" and that "[h]ad Defender Services, Inc. performed a criminal background check, they would have discovered the Protective Order and Harris' assignment to Virginia Tech would not have been approved."

Miss Blair's principal argument is that Defender Services failed to conduct a reasonable pre-employment investigation into Harris' criminal background as the contract between Defender Services and Virginia Tech required, and because it did not, it is liable for negligent hiring. The contract between Defender Services and Virginia Tech cannot, however, give rise to a tort duty owed by Defender Services to Miss Blair. An unfulfilled contractual responsibility alone cannot automatically create tort liability. *Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998) (noting that "the duty tortiously or negligently breached *must* be a common law duty, not one existing between the parties solely by virtue of a contract" (emphasis added)).

The majority concludes that a genuine issue of material fact exists as to whether Defender Services should have known of Harris' propensities because it did not perform a criminal background check.

Slip op. at 9. Virginia law, however, does not obligate an employer who has asked about criminal history and been told that none exists, and who has no reason to suspect a criminal record, to investigate a prior criminal record "in the exercise of reasonable care." *Southeast Apartments*, 257 Va. at 261, 513 S.E.2d at 397. Moreover, "proof of the failure to investigate a potential employee's background is not sufficient to establish the employer's liability. Rather, the plaintiff must show that an employee's propensity to cause injury to others was either known or should have been discovered by reasonable investigation." *Majorana v. Crown Central Petroleum Corp.*, 260 Va. 521, 531, 539 S.E.2d 426, 431 (2000).

Even further, and persuasive, Virginia statutory law states that "[t]he issuance of an emergency protective order shall not be considered evidence of any wrongdoing by the respondent." Va. Code § 16.1-253.4(G). Also, "[a]n emergency protective order issued pursuant to this section shall expire seventy-two hours after issuance." It may be extended until 5:00 p.m. the next business day the court is in session, which was done here until April 10, 2000 at 5:00 p.m. Va. Code § 16.1-253.4(C).

The emergency protective order was issued in the interim period between Harris' first and second employment with Defender Services. Harris' application for employment is dated October 4, 2000, and the application for the protective order is dated April 2, 2000, as is the protective order. Even if the protective order has something to do with the case, which is forbidden by Va. Code § 16.1-254(G), it had expired on April 10, 2000, almost six months prior to the time the application for employment was made. Defender Services had no reason to suspect, based on its initial investigation and employment of Harris and his employment with Virginia Tech, which had received a negative criminal background check, that Harris was capable of any violence. Further, there was no evidence presented that an emergency protective order would have been discovered in a criminal background check. *Majorana*, 260 Va. at 532, 539 S.E.2d at 432. In fact, the check run by the investigating officer after the attack on Miss Blair in March 2001 showed no convictions. To discover an emergency protective order in a potential employee's history, an additional investigation must be executed. This additional inquiry, when a criminal background check shows no convictions, would require an investi-

gation that goes beyond "the exercise of reasonable care." *Southeast Apartments*, 257 Va. at 261, 513 S.E.2d at 397.

Therefore, even if Defender Services had taken the extra step to examine the records of the court not of record in Harris' county of residence to discover the existence of an emergency protective order, under Virginia law it could not use that information as evidence of any wrongdoing on Harris' part. Holding Defender Services negligent for not making the far more detailed background search that might have brought an emergency protective order to light would be unreasonable and would impose an undue burden on an employer's hiring practice.

The upshot of the majority decision is that we are engrafting on Virginia law a requirement that in each case of employment a prospective employer must search for even unsuccessful misdemeanor prosecutions in the records of the courts not of record of the county of residence of the applicant, here Giles County, although not the same as the place of employment, here Montgomery County. In default of such a search we hold the employer may be found negligent. In my opinion this is an unreasonable burden to place on employers. Far worse is the disqualification from employment placed on youth by our decision.

I am thus of opinion that the judgment of the district court should be affirmed.