Present: All the Justices

SOUTHEAST APARTMENTS MANAGEMENT,
INC., ET AL.

OPINION BY JUSTICE A. CHRISTIAN COMPTON

v. Record No. 981000                    February 26, 1999

KIMBERLY M. JACKMAN


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Frederick B. Lowe, Judge

In this tort action, we consider whether the trial court erred in ruling that a jury question was presented on a tenant's claims that an owner of leased premises breached either its duty to exercise reasonable care in the hiring of its employee, the tortfeasor, or its duty to exercise reasonable care in the retention of the employee.

On July 27, 1996, appellee Kimberly M. Jackman was a tenant in the Kings Arms Apartments in Virginia Beach, owned by appellant Southeast Mortgage and Investment Corporation and managed by appellant Southeast Apartments Management, Inc. (collectively, the owner). At the time, the owner employed one Douglas Turner as the Apartments' "maintenance supervisor;" he had been so employed for approximately two months.

Near 5:00 a.m. on July 27, the tenant was asleep in her upstairs bedroom holding her infant son. The only other occupant of the apartment was an older son, two years of age. She awoke and saw a man standing in the hallway. Identifying

himself as "the maintenance man," Turner "came over," sat next to the tenant on her bed, said "he had had quite a bit to drink," and started rubbing her thigh. He arose in response to her pleas for him to leave, "walked down the stairs," and left the premises. "Scared," the tenant fled with her children to her parents' home and called the police.

Subsequently, the tenant filed the present action for damages, charging the owner with "negligent hiring and retention" of Turner. During the trial, the court instructed the jury on those issues and on proximate cause. The jury found in favor of the tenant, fixing her damages at $12,500. The trial court entered judgment on the verdict in a February 1998 order, from which we awarded the owner this appeal.

The owner contends the trial court erred, first, in failing to rule, as a matter of law, that the tenant's evidence was insufficient to create a prima facie case of either negligent hiring or negligent retention, and, second, in failing to rule that any such negligence was not a proximate cause of the tortious act. Because of the view we take of the case, we do not reach the question of proximate cause.

Applying settled principles of appellate review, we shall summarize the evidence in the light most favorable to the tenant, who comes to this Court armed with a jury's verdict confirmed by the trial judge.

2

First, we shall relate the facts on the hiring aspect of this case. Turner was among several applicants for the advertised job of "maintenance supervisor" for the 199-unit apartment complex. The duties of the position included assuring the proper functioning of the apartment utilities, "keep[ing] up the grounds," and being "on call 24 hours a day."

Turner, 31 years of age, had submitted a detailed application, including a "very professionally printed" personal resume. He was interviewed by Melanie L. Ayscue, the apartment "resident manager," and by the owner's "regional manager."

As part of the application process, Turner executed a release authorizing inquiry into his work, credit, and educational history, as may be disclosed through his personal references and public records. Ayscue attempted to talk with six persons Turner had listed as personal references and was able to speak with only two of them. They gave Turner good recommendations.

Ayscue performed a "background check" on Turner, but did not request a copy of his "criminal record." She testified that the "law" did not require her "to do a criminal background check." In the "Behavioral History" portion of the application, Turner indicated that of the 34 crimes listed, he had committed only "Traffic Violations." Ayscue administered a behavioral test to him, graded by a third party, and he scored "fine."

3

Upon completion of the application process, Ayscue employed Turner with the regional manager's approval. After he was hired, Turner lived in one of the apartments and was furnished a "master key" that could open a "percentage of the apartments."

Next, we shall relate the facts on the retention aspect of the case. Ayscue told the detective who investigated the assault on the tenant that Ayscue, based on the "appearance" Turner had when "he came to work mornings, . . . suspected that he either had an alcohol or drug abuse problem," and that Ayscue "had heard him talking to the assistant property manager about the females in the apartment complex that he thought were attractive that he was interested in dating." Ayscue testified Turner came to the apartment office one Saturday before the incident and stated to her "he had one beer at a party." Ayscue said she would not allow Turner to leave the office that afternoon to answer any maintenance "calls."

The tenant testified that, after the incident, Ayscue and the apartment assistant manager remarked "about how [Turner] had mentioned getting phone numbers of single women that had lived in the apartment." Ayscue testified that Turner asked her for the telephone number of a resident named "Virginia," which Ayscue assumed was in connection with a request for maintenance. The assistant manager testified that Turner asked for the telephone number of a "Ginger," a single woman who resided in

4

the apartment, and that "an older lady who had a Cocker Spaniel" had "invited him out."

The tenant also stated that Ayscue "had mentioned to me how during their lunch breaks they used to hide from him because he was so obnoxious, he tried to follow them everywhere they went. So they would sneak out for lunch so he wouldn't go with them."

This Court has recognized the independent tort of negligent hiring. J. . . v. Victory Tabernacle Baptist Church, 236 Va. 206, 208-09, 372 S.E.2d 391, 393 (1988); Davis v. Merrill, 133 Va. 69, 78-81, 112 S.E. 628, 631-32 (1922). The cause of action is based on the principle that one who conducts an activity through employees is subject to liability for harm resulting from the employer's conduct if the employer is negligent in the hiring of an improper person in work involving an unreasonable risk of harm to others. Ponticas v. K.M.S. Invs., 331 N.W.2d 907, 911 (Minn. 1983). Accord, Victory Tabernacle Baptist Church, 236 Va. at 211, 372 S.E.2d at 394. See John H. Derrick, Annotation, Landlord's Tort Liability to Tenant for Personal Injury or Property Damage Resulting from Criminal Conduct of Employee, 38 A.L.R.4th 240 (1985). "Liability is predicated on the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, because of the circumstances of the employment, it should have

been foreseeable that the hired individual posed a threat of injury to others." Ponticas, 331 N.W.2d at 911.

This Court also has recognized the independent tort of negligent retention. Philip Morris Inc. v. Emerson, 235 Va. 380, 401, 368 S.E.2d 268, 279 (1988); Norfolk Protestant Hosp. v. Plunkett, 162 Va. 151, 156, 173 S.E. 363, 365 (1934). As applicable to the facts of the present case, this cause of action is based on the principle that an employer owning leased premises is subject to liability for harm resulting from the employer's negligence in retaining a dangerous employee who the employer knew or should have known was dangerous and likely to harm tenants. Mallory v. O'Neil, 69 So.2d 313, 315 (Fla. 1954). See Svacek v. Shelley, 359 P.2d 127, 131 (Alaska 1961).

Applying the foregoing principles to the facts of this case, we hold the tenant's evidence is wholly insufficient to make out a prima facie case of either negligent hiring or negligent retention.

During the hiring process, the owner received a detailed application containing information about Turner's personal background, work experience, and behavioral history. None of this information gave a hint that Turner may have had a propensity to molest women. Ayscue discussed Turner's qualifications with two persons who formerly supervised his work; they recommended him for employment and furnished no

6

information that Turner may have posed a threat of committing assaults upon female tenants.

In connection with her "background check," Ayscue did not investigate Turner's prior criminal record, if any; under these facts, she was not obligated to do so in the exercise of reasonable care. In the application, Turner represented that he had "absolutely never engaged" in 34 types of criminal behavior, except traffic violations. Additionally, in the application he also denied conviction "in the past seven years" of 28 listed felonies.

The tenant dwells on a part of the opening statement of the owner's attorney. He said that a "criminal records check" would have disclosed Turner "wrote a bad check for $1.29" and another "for $9" in Georgia when he was 20 years of age. Even if this can be considered part of the evidence in the case, which it cannot, it is the only indication in the entire record that Turner had been convicted of non-traffic offenses. Even if the owner had learned of these petty offenses, it would not have been alerted to the fact that Turner would engage in criminal sexual activity.

In sum, there are no facts that would have put the owner on notice that its hiring of Turner might reasonably lead to a pre-dawn assault on the tenant.

7

While retaining Turner during his two-month tenure before the incident in question, the owner did not know, nor should it have known, in the exercise of reasonable care, that Turner was dangerous and likely to harm tenants. The fact there was a "suspicion" Turner may have had an alcohol or drug "problem," and may have had an attraction for single women, did not render this 31-year-old single man a dangerous employee and one likely to commit sexual assaults. Nor does the fact that an employee is "obnoxious," in the opinion of other employees, furnish notice to an owner exercising reasonable care that the employee is likely to sexually assault tenants.

Consequently, we are of opinion that the trial court erred in refusing to rule, as a matter of law, that the tenant failed to establish a prima facie case of negligent hiring or retention. Therefore, we will reverse the judgment below, set aside the verdict in favor of the tenant, and enter final judgment here in favor of the owner.

<u>Reversed and final judgment</u>.