Isaac THOMPSON, Plaintiff,

v.

TOWN OF FRONT ROYAL,
et al., Defendants.

No. CIV. A. 5:98CV00083.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Oct. 3, 2000.

Thomas Hunt Roberts, Roberts Professional Law Corp., Richmond, VA, Tim Schulte, Thomas H. Roberts & Associates, P.C., Roberts Professional Law Corp., Richmond, VA, for Isaac Thompson.

Mark Dudley Obenshain, Thomas E. Ullrich, Wharton, Aldhizer & Weaver, PLC, Harrisonburg, VA, for Town of Front Royal, Va.

Bruce Edward Downing, Harrison & Johnston, Winchester, VA, James Greer Welsh, Randall Tyree Perdue, Timberlake, Smith Thomas & Moses, P.C., Staunton, VA, for Eugene Teewalt.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

Before the court are cross motions by the parties for summary judgment and the responses thereto.[1] The court referred the matter to the presiding United States Magistrate Judge to issue a report and recommendation on the dispositive motions, pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge returned his Report and Recommendation on May 3, 2000 and both parties filed objections and responses thereto. Accordingly, the court has performed a *de novo* review of the matter and its findings follow below. *See* 28 U.S.C. § 636(b)(1)(C). The plaintiff also filed a motion to strike the defendant's June 5, 2000 Response to Plaintiff's Objections to Report and Recommendation on the grounds that the defendant's response was untimely. This motion shall also be addressed in turn.

### I.

The facts of this case are well known by the parties and the court, and familiarity of the reader will be assumed. For a recitation of the facts by the court, see *Thompson v. Front Royal*, Memorandum Opinion, March 16, 2000 at 2–3. In short, the plaintiff has filed a lawsuit against the defendant, wherein six of ten counts remain and are the subject of the instant summary judgment opinion. The remain-

---

1. Of the three named defendants, only the Town of Front Royal remains a party. Judgment was entered against Defendant Clarence Deavers on April 7, 1999 and Defendant Eugene Tewalt was dismissed with prejudice on March 17, 2000, as stipulated by the parties. Thus, all references to the defendant in this opinion and accompanying order refer to the Town of Front Royal.

ing counts include Counts Nine and Ten, alleging race-based discrimination and retaliation under Title VII of the 1964 Civil Rights Act, as codified in 42 U.S.C. §§ 2000e–2 and –3. Also remaining and contested are Counts Four through Seven, respectively alleging state law claims of battery, assault, negligent supervision/retention, and intentional/negligent infliction of emotional distress. Recitation of specific facts or allegations as they relate to each of the counts shall be included as the counts are addressed

## II.

Both the plaintiff and the defendant have moved for summary judgment on various counts. Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The non-moving party is to have the credibility of all its evidence presumed. *See Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990). Where both parties move for summary judgment on the same count, the credibility of the non-movant's evidence will be assumed when considering the movant's argument. "[S]ummary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion." *Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 279 (4th Cir.2000) (quoting *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991)). If the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party, then there are genuine issues of material fact. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant has the initial burden of showing absence of evidence in support of the non-movant's case before the non-movant bears the burden of demonstrating the existence of some triable issue of fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus, the non-movant may not rest upon mere

allegations and denials of the pleadings, and must assert more than a "mere scintilla" of evidence in support of his case in order to survive an adverse entry of summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Of particular relevance to the instant case, courts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue. *See Beall v. Abbott Laboratories,* 130 F.3d 614, 619 (4th Cir.1997) (citing *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 958–59 (4th Cir. 1996)).

## III.

Counts Nine and Ten of the plaintiff's amended complaint allege Title VII violations of employment discrimination and retaliation. The defendant addresses these claims as ones of disparate treatment with respect to wages and other job benefits, hostile work environment, and general retaliation. The Magistrate recommends that Counts Nine and Ten, in their entirely, retain genuine issues of material fact and therefore, the cross motions for summary judgment as to these counts should be denied. The defendant strongly objects to the recommendation, alleging primarily, that these claims are time-barred, and asserting alternate reasons in favor of summary judgment as well.

## A.

Any incidents or events alleged to have occurred more than 300 days prior to the filing of plaintiff's suit are outside the statutory period of limitations for Title VII claims. *See* 42 U.S.C. § 2000e–5(e)(1). Thus, the defendant contends that the plaintiff is barred from recovering any claims of discriminatory conduct or retaliation occurring prior to September 2, 1997 (300 days prior to June 30, 1998, the date on which the plaintiff contacted the Equal Employment Opportunity Commission). However, both parties recognize that there

is an exception to the strict application of the statutory period of limitations under the continuous violation doctrine. Where the parties differ, however, is whether the plaintiff can avail himself of this doctrine.

The Magistrate recommends application of the continuous violation doctrine and the court agrees. The defendant objects to the doctrine's application on several grounds. First, the defendant argues that the prior opinion of this court precluded application of the continuous violation doctrine when it ruled that the doctrine could not save Count One, failure to promote pursuant to 42 U.S.C. § 1981. (Mem. Op. at 5.) While the continuous violation doctrine did not apply to Count One, ruling that it applies to Counts Nine and Ten is not inconsistent with the court's prior judgement.

■ A "series of separate but related acts" amount to a continuing violation. *See Beall v. Abbott Laboratories*, 130 F.3d 614, 620 (4th Cir.1997) (quoting *Jenkins v. Home Ins. Co.*, 635 F.2d 310, 312 (4th Cir.1980)(per curiam)). However, only where an actual violation has occurred within the requisite time period—in this case after September 2, 1997—can the theory of the continuous violation doctrine possibly be sustained. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000); *Tinsley v. First Union Nat. Bank*, 155 F.3d 435, 442–43 (4th Cir.1998); *Beall*, 130 F.3d at 621; *Hill v. AT & T Techs., Inc.*, 731 F.2d 175, 180 (4th Cir.1984); *Woodard v. Lehman*, 717 F.2d 909, 915 (4th Cir.1983). The § 1981 claim, which was an allegation of unlawful failure to modify the plaintiff's contract by failing to promote him, was time-barred because no allegations of the unlawful act (failure to promote) occurred in the requisite statutory period of after September 2, 1997. The court affirms its prior decision in this matter, noting that the alleged assignment of the plaintiff to menial tasks, notwithstanding his promotion, could not resuscitate the § 1981 failure to promote claim because a "continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 189 (4th Cir. 1999) (quoting *National Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991) (internal quotation marks omitted)).

■ Although claims asserted under both § 1981 and Title VII require that, absent direct evidence of discriminatory treatment, certain elements must be established, *see Gairola v. Com. of Va. Dept. of General Services*, 753 F.2d 1281, 1285–86 (4th Cir.1985), the facts used to establish the prima facie cases are necessarily different because the statutes themselves are different. The most notable difference is that a § 1981 claim is grounded in contract whereas a Title VII claim is grounded in employment practices and treatment. *See, e.g. Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) Title VII "covers more than terms and conditions in the narrow contractual sense." (quoting *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). The continuous violation doctrine did not apply to the plaintiff's § 1981 claim because there was not continuous violation of the alleged § 1981 contract violation: failure to promote. However, the alleged violation of Title VII under Count Nine is discriminatory and disparate treatment of the plaintiff. The allegations relevant to this Title VII claim include the alleged racial epithets, threats, failure to train, hostile work environment, and the assignment of menial tasks as it relates to disparate treatment through discriminatory employment practices, not as a consequence of the failure to promote. The plaintiff has alleged that discriminatory incidents relating to the aforementioned continued to occur after September 2, 1997. (First Am. Compl. at ¶¶ 34–44.) The defendant does not necessarily contest that these alleged incidents took place during the requisite period, but rather contests whether

such incidents support an actionable Title VII claim.

To perform the task of determining whether a continuous violation exists, the defendant urges the application of the three-pronged test of the Fifth Circuit, as applied by the Eastern District of Virginia. *See Stringfield v. Christopher Newport Univ.*, 64 F.Supp.2d 593, 596 (E.D.Va. 1999) (adopting the standard of *Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971 (5th Cir.1983)). However, the Fourth Circuit has never delineated what constitutes a "continuing violation" beyond the "series of separate but related acts" test of *Jenkins*. Other circuits, however, have developed a number of tests for determining whether a claimant was suffering from a continuing violation. *See, e.g., DeNovellis v. Shalala*, 124 F.3d 298, 307 (1st Cir.1997) (finding continuing violation in case in which violation is systemic or serial); *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir.1989) (finding continuing violation whenever "plaintiff had no reason to believe he was a victim of discrimination until a series of adverse actions established a visible pattern of discriminatory mistreatment"); *Berry v. Board of Supervisors*, 715 F.2d 971, 981 (5th Cir.1983) (finding continuing violation when three-prong test involving type of conduct, frequency of alleged acts, and degree of permanence of acts is satisfied). Because the Fourth Circuit has, as of yet, declined to adopt any of the standards of the other circuits, including the Fifth Circuit test urged by the defendant, the court finds the adoption of one of these tests unnecessary for the determination of the instant matter. Instead, the court focuses on the Fourth Circuit's *Jenkins* test, which remains good law, and also looks to the Supreme Court, which has stated that the "critical question" in a continuing violation case is "whether any present violation exists." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

The plaintiff has sufficiently alleged a series of separate but related acts directed toward the plaintiff and motivated by racial animus. Even the defendant, in applying the Fifth Circuit test the court herein declined to adopt, stated "Thompson knew that these separate and distinct acts of discrimination established a visible pattern of allegedly discriminatory mistreatment." (Def. Obj. at 17., Def. Mot. for Summ. J. at 15.) Crediting all inferences from the plaintiff's facts in favor of the plaintiff, solely for the purposes of addressing the merits of the defendant's argument that the plaintiff's claims are time-barred, acts occurring prior to September 1997 are separate acts of discrimination that are related to the acts alleged to have occurred within the requisite statutory period. Thus, judgment as a matter of law on grounds that the plaintiff's claims are time-barred would be inappropriate at this stage of litigation. Furthermore, the parties vehemently dispute the relevance and meaning of many of these alleged events. This indicates that there are genuine issues of material fact. Accordingly, the court finds that the continuous violation doctrine applies to alleged separate but related acts of discrimination that could constitute a violation of Title VII because, unlike the plaintiff's § 1981 claims, the plaintiff has sufficiently alleged violations of Title VII within the requisite statutory period. Accepting the recommendation of the Magistrate, the defendant's motion for summary judgement on the grounds that the plaintiff's Title VII claims are time-barred shall be denied.

### B.

 The plaintiff has alleged Title VII disparate treatment violations based, among other things, on the defendant's alleged race-based failure to train the plaintiff to perform certain tasks and the assignment of the plaintiff to menial tasks, despite his seniority. To establish Title VII liability against an employer, the plaintiff must establish that the defendant took an adverse employment action against

him, based on (in this case) his race. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 523–24, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Title VII disparate treatment claims, made pursuant to 42 U.S.C. § 2000e–2(a)(1), have "consistently focused on the question whether there has been discrimination in what could be characterized as ultimate employment decisions." *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.1981). The defendant contends that neither failure to train nor assignment to menial tasks are actionable Title VII claims because neither constitute ultimate employment decisions.

▆▆▆ The defendant's position appears to be supported in *Page,* where the Fourth Circuit listed a number of decisions that are traditionally considered "ultimate employment decisions," and the list did not include the types of decisions alleged to have been made adversely to the plaintiff. However, *Page* also held that its list was not meant to be exclusive and could include additional claims, such as "entry into training programs." *Page,* 645 F.2d at 233. In *Page,* the Fourth Circuit expressly refused to adopt a test for what constitutes an "ultimate employment decision," simply holding that, in the facts of that case, the decision at issue was interlocutory or mediate, not having any effect on the employment conditions of the plaintiff. The court understands *Page* to promote a case-by-case analysis of whether alleged discriminatory practices have an affect on the employment conditions of the plaintiff. Consistent with this view, the Supreme Court has recently held that when discriminatory treatment culminates in a "tangible employment action," there is an actionable Title VII claim. *See Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). A "tangible employment action" requires "a significant change in employment status." *Reinhold v. Commonwealth of Virginia,* 151 F.3d 172, 175 (4th Cir.1998) (quoting *Ellerth,* 524 U.S. at 761, 118 S.Ct. 2257). Based on the contested nature of the alle-

gations and the fact that the Fourth Circuit has never adopted a specific test to determine what constitutes an actionable adverse employment decision, whether the alleged discriminatory treatment of assigning the plaintiff to menial tasks and failing to train the plaintiff affected the ultimate employment conditions of the plaintiff or created a significant change in his status, are questions of fact, best suited for a jury. Also, the court finds it relevant to this matter that 42 U.S.C. § 2000e–2(d) makes it an unlawful employment practice to discriminate on the basis of race for entry into any training, retraining, or on-the-job training programs. Accordingly, the Magistrate's recommendation with respect to this issue is accepted and the defendant's motion for summary judgment on the Title VII claims based on the argument that the bases for the claims are not actionable, shall be denied.

## C.

▆▆▆ If a "tangible employment action" is not established under the plaintiff's Title VII disparate treatment claims, the next question is whether the plaintiff can establish liability for a hostile work environment. *See Reinhold,* 151 F.3d at 175. Although the phrase "hostile work environment" does not appear in Title VII, such claims are actionable under Title VII through 42 U.S.C. § 2000e–2(a)(1) and require a showing of "severe or pervasive conduct." *Ellerth,* 524 U.S. at 743, 118 S.Ct. 2257; *see also Hawkins,* 203 F.3d at 281 (conditions must be "sufficiently severe or pervasive to . . . create an abusive working environment.") Although there are several requirements to prevail on a hostile work environment claim, *see Hartsell v. Duplex Products, Inc.,* 123 F.3d 766, 772 (4th Cir.1997), the severe or pervasive requirement is the one in controversy between the parties. The defendant contends that the plaintiff's allegations in support of his hostile work environment claim do not rise to the level of severe or pervasive.

■ The Supreme Court recently held that "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275 (citations and quotations omitted). However, no bright line test has ever emerged for determining what treatment is to be considered hostile. Factors such as severity and pervasiveness must be considered, but cannot be calculated by a formulaic test, such as finding that a certain number of incidents will or will not meet the threshold. Rather, the very nature of a test that requires behavior to be either severe or pervasive means that whether there is a hostile work environment will depend on the facts of an individual case. In the instant matter, the parties ardently contest the significance of many of the alleged discriminatory incidents. The court accepts the conclusion of the Magistrate, and finds that the genuine issues of material fact are self-evident, and neither party is entitled to summary judgement on the hostile work environment issue.

### D.

■ The defendant has asserted an affirmative defense against the plaintiff's hostile work environment claim. An affirmative defense to a hostile work environment claim is only available where no tangible employment action has been taken. *See Faragher*, 524 U.S. at 777–78, 118 S.Ct. 2275. Because the defendant moved for summary judgment its affirmative defense, all inferences from the plaintiff's alleged facts shall be made in the plaintiff's favor. Thus, the court must assume that the facts will support an inference that the defendant took tangible employment action against the plaintiff. *See infra*, Part III.B. Under such circumstances, the affirmative defense of *Faragher*, asserted by the defendant, is not available. Thus, the defendant's motion for summary judgment based on its affirmative defense to the hostile environment claim shall be denied.

■ However, the plaintiff also moved for summary judgment on the hostile work environment claim. For purposes of the plaintiff's summary judgment motion on that issue, making inferences in favor of the defendant, the court must assume that the facts will support the inference that no tangible employment action has occurred, thereby making the affirmative defense on this claim available to the defendant. Even if the affirmative defense were assumed to be available to the defendant, the defendant would have to prove by a preponderance of the evidence that it exercised reasonable care to prevent or correct promptly any harassing behavior and that the plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the defendant to avoid harm. *See Brown v. Perry*, 184 F.3d 388, 395 (4th Cir.1999). By using standards such as "reasonable care" and "unreasonabl[e] fail[ure]" the affirmative defense places a premium on fact-intensive determinations of reasonableness of the conduct of the parties. The court agrees with Circuit Judge Blane Michael that "when the reasonableness of conduct is in question, summary judgment is rarely appropriate because juries have unique competence in applying the reasonable person standard to the facts of the case." *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 184 (4th Cir.1998) (internal citations and quotations omitted). Accordingly, whether or not the defendant can even avail itself of the affirmative defense, the defense entails determinations of reasonableness of conduct. Such determinations involve genuine issues of material fact, thereby making this issue inappropriate for summary judgment.

### E.

The plaintiff appears to continue to press the argument that the defendant denied him promotions based on his race. The failure to promote claim under Title

VII, as under § 1981 is time-barred. As explained in Part III.A., the plaintiff cannot avail himself of the continuous violation doctrine on the issue of failure to promote because, based on the information presently before the court, the latest allegation of failure to promote related to the shuffling of positions when the defendant was reassigned to the concrete crew. This occurred in August 1997, and therefore does not constitute an alleged violation within the requisite statutory period (after September 2, 1997). Accordingly, contrary to the recommendation of the Magistrate, the defendant's motion for summary judgment with respect to any Title VII failure to promote claims must be granted.

### F.

In Count Ten, the plaintiff alleges discriminatory retaliation under Title VII, pursuant to 42 U.S.C. § 2000e–3. Both parties have moved for summary judgment on this count. The plaintiff contends that the defendant's violations of the anti-retaliation provisions of Title VII merit judgment as a matter of law in the plaintiff's favor. The defendant argues that the plaintiff has produced insufficient evidence of retaliation to sustain a claim, and that any evidence the plaintiff has produced has been conclusory and too general.

To establish a prima facie case of retaliation, a plaintiff must show that "(1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." *Beall,* 130 F.3d at 619. As explained infra Part III.B., whether the defendant suffered an adverse employment action remains a genuine issue of material fact. Accordingly, step two of the test for whether the plaintiff has established a prima facie case of retaliation cannot be decided on the information presently before the court. In accordance with the Magistrate's recommendation, the motions of both parties for summary judgment on Count Ten must be denied.

### IV.

 Counts Four and Five assert claims of battery and assault against the defendant, premised under the theory of *respondeat superior.* Both parties have moved for summary judgment on these counts. Whether the defendant can be liable for the torts of its employees—in this case, a supervisor's squeezing of the defendant's hand in an unwelcome and allegedly threatening manner—depends on whether the tortious act was within the scope of the supervisor's employment. *See Giant of Maryland Inc. v. Enger* 257 Va. 513, 516, 515 S.E.2d 111 (1999).

 The Magistrate recommends granting summary judgment on the assault and battery counts in favor of the defendant, because the plaintiff has failed to offer any evidence to support claims that the defendant is liable for the acts of its supervisor in this instance. The plaintiff objects to this recommendation, asserting that the supervisor was acting within the scope of his employment, which was to "install and maintain discipline among his subordinates, including Plaintiff." (Pl. Obj. at 2.) Virginia has deemed an act to be within the scope of employment if

> (1) it be something fairly and naturally incident to the business, and (2) if it be done while the servant was engaged upon the master's business and be done, although mistakenly or ill-advisedly, with a view to further the master's interests, or from some impulse or emotion which naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account.

*Sayles v. Piccadilly Cafeterias, Inc.,* 242 Va. 328, 332, 410 S.E.2d 632 (1991).

As argued by the defendant, "such respondeat superior decisions 'often turn on

subtle distinctions in the facts, to be left to the province of the fact finder [due] in large part to the fact that there is no bright line to apply in determining when liability attaches to the employer.' " (Def. Mem. in Opp. to Pl. Mot. for Summ. J. at 21) (quoting *Webb v. United States*, 24 F.Supp.2d 608, 614 (W.D.Va.1998).) Furthermore, the Supreme Court has recently recognized the often broadly defined scope of employment for purposes of holding employers liable for torts of employees. *See Faragher*, 524 U.S. at 794–796, 118 S.Ct. 2275. Further, the court notes that the defendant states that "Summary judgment is not appropriate as to the claims of assault and battery." (Def. Mem. in Opp. at 20.) In fact, the only grounds for summary judgment on the assault and battery claims asserted by the defendant were based on the defendant's contention that all federal claims should be dismissed and, therefore, the remaining state claims, such as assault and battery, should be dismissed without prejudice pursuant to 28 U.S.C. § 1367. (Def. Mot. for Summ. J. at 30.) The plaintiff alleged that the assault and battery were committed in the scope of the supervisor's employment (First Am. Compl. At ¶ 7), and prior to the Magistrate's recommendation, the defendant had essentially conceded that genuine issues of material fact remained with respect to this issue. Accordingly, the court finds that the pleadings are sufficient on Counts Four and Five to survive summary judgment, and that there are genuine issues of material fact so the motions of both parties on Counts Four and Five must be denied.

### V.

Count Six of the plaintiff's amended complaint alleges state law negligent supervision and retention. The Magistrate found that Virginia does not recognize claims for negligent supervision. (Report and Recommendation at 14) (citing *Chesapeake and Potomac Telephone Co. of Virginia v. Dowdy*, 235 Va. 55, 365 S.E.2d 751 (1988).) The parties do not object to this finding and the court adopts the same.

The Magistrate then distinguishes negligent supervision from negligent retention and recommends denial of summary judgment as to negligent retention. (Report and Recommendation at 14.)

The defendant contends that the recommendation of the Magistrate is an error of law because the Fourth Circuit and the Western District have found that Virginia does not recognize claims of negligent retention. (Def. Obj. at 31.) The authority the defendant cites in support of its argument that the negligent retention claim cannot survive summary judgment is not persuasive in light of a recent Virginia Supreme Court case. In *Southeast Apartments Management, Inc. v. Jackman*, 257 Va. 256, 260, 513 S.E.2d 395 (1999), the Virginia Supreme Court explicitly stated that Virginia recognizes the independent tort of negligent retention. (Citing *Philip Morris Inc. v. Emerson*, 235 Va. 380, 401, 368 S.E.2d 268 (1988); *Norfolk Protestant Hosp. v. Plunkett*, 162 Va. 151, 156, 173 S.E. 363 (1934)). Accordingly, the reservations expressed by this court in years past about a lack of direction form the Virginia courts regarding negligent retention have been laid to rest by *Jackman*. See, e.g., *Hott v. VDO Yazaki Corp.*, 922 F.Supp. 1114, 1130 (W.D.Va.1996) ("Given the lack of direction from the Virginia legislature and courts, the court believes that the plaintiff's claim based on negligent retention must fail.")

The plaintiff's cause of action for negligent retention is based on the premise that the defendant is liable for continuing to employ an employee, after the defendant knew or should have known of the employee's offending conduct. The plaintiff has produced sufficient evidence to support his claim for negligent retention, and there remain genuine issues of material fact, suitable for a jury, as to whether the employee's conduct was such that the employer was negligent for retaining his services. Accordingly, the Magistrate's recommendation as to Count Six shall be

adopted in full and the defendant's motion for summary judgment on this count shall be granted as to negligent supervision and denied as to negligent retention.

## VI.

Count Seven asserts a claim for intentional/negligent infliction of emotional distress. Defendant moved for summary judgment on this claim. The Magistrate recommends granting the defendant's motion for summary judgment on this claim because an essential element of the claim, severe emotional distress, has not been shown by the evidence. (Report and Recommendation at 16.)

■ First, the court notes the difference between intentional infliction of emotional distress and negligent infliction of emotional distress. "When conduct is merely negligent ... and physical impact is lacking, there can be no recovery for emotional disturbance alone." *Womack v. Eldridge*, 215 Va. 338, 340, 210 S.E.2d 145 (1974). The requisite physical injury for a claim of negligent infliction of emotional distress must be the "natural result of fright or shock proximately caused by the defendant's negligence. In other words, there may be recovery in such a case if, but only if, there is shown a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 137–38, 523 S.E.2d 826 (2000) (internal citations and quotations omitted.) A claim for negligent infliction of emotional distress requires allegations of emotional distress and physical injury resulting therefrom. *See Hughes v. Moore*, 214 Va. 27, 34, 197 S.E.2d 214 (1973). In his objections to the Magistrate's report and recommendation, the plaintiff argues that the physical injury—the squeezing of the plaintiff's hand by his supervisor—is sufficient to support a claim for negligent infliction of emotional distress. However, the plaintiff has not alleged that the physical injury is the result of emotional distress; accordingly, this cause of action under a negligence theory cannot lie.

■ When there is no physical injury resulting from emotional distress, a case for intentional infliction of emotional distress can still be made if the plaintiff shows by clear and convincing evidence that "the wrongdoer's conduct is intentional or reckless; the conduct is outrageous and intolerable; the alleged wrongful conduct and emotional distress are causally connected; and, the distress is severe." *Russo v. White*, 241 Va. 23, 26, 400 S.E.2d 160 (1991); *see also Womack*, 215 Va. at 342, 210 S.E.2d 145 (first recognizing this cause of action in Virginia). The burden for claims of intentional infliction of emotional distress is high, demanding severity such that "no reasonable person could be expected to endure it." *Russo*, 241 Va. at 27, 400 S.E.2d 160. The plaintiff has alleged all of the elements of intentional infliction of emotional distress and has submitted reports of several doctors in support thereof, some of which remain under seal. While the content of these reports shall not be specifically addressed herein, suffice to say that the mental evaluations of the plaintiff create a genuine issue of material fact as to whether the plaintiff will be able to meet the high burden of establishing intentional infliction of emotional distress by clear and convincing evidence. Based on the information presently before the court, summary judgment on this issue is inappropriate at this time. Accordingly, the Magistrate's recommendation with respect to Count Seven shall be rejected in part, and the defendant's motion for summary judgment on Count Seven shall be granted as to the negligent infliction of emotional distress, but denied as to the intentional infliction of emotional distress.

## VII.

The plaintiff filed a motion on June 12, 2000 to exclude Defendant's Response to Plaintiff's Objections to Report and Rec-

ommendation. The court construes the plaintiff's motions as a motion to strike the Defendant's response. The plaintiff's motion is based on the time requirements of Fed.R.Civ.P. 72(b) for objecting and responding to a report and recommendation. The plaintiff contends that the defendant's response to the plaintiff's objections were not timely filed and, therefore, should be stricken. The defendant opposes the plaintiff's motion, arguing that the court has a duty to consider all relevant arguments.

Rule 72(b) gives the parties ten days to object to the report and recommendation of a Magistrate. Rule 72(b) further provides that "A party may respond to another party's objections within 10 days after being served with a copy thereof." The ten day provisions of Rule 72(b) are subject to the time calculations of Fed. R.Civ.P. 6. Thus, an additional three days are added to the ten-day period when the objections are sent by mail, and weekends and legal holidays are excluded in the computation of time (because the statutory period is less than eleven days). *See* Fed. R.Civ.P. 6(a),(e). The plaintiff filed his objections on May 10, 2000. The "tenday" period, calculated to exclude three days for service by mail, weekends, and the Memorial Day holiday, made the defendant's responses to the plaintiff's objections due no later than May 30, 2000. The defendant filed its responses to the plaintiff's objections on June 5, 2000, six days beyond the statutory deadline.

■ The defendant cites no binding authority in support of its argument that the court deny the plaintiff's motion and consider the defendant's responses. The court is well aware of its duty to perform a *de novo* review of the Magistrate's report and recommendation in this case and has done so. *See* 28 U.S.C. § 636(b)(1)(C). When objections to a report and recommendation are filed, whether or not responses thereto follow, the court performs a *de novo* review. While it may be a benefit to a party to file responses to

objections to a report and recommendation, parties must follow the statutory time limits in order to avail themselves of this potential benefit. The parties in this case were reminded by the Magistrate in his report and recommendation of the time constraints on filing objections and responses. The defendant failed to comply with the statutory time limits and has provided the court with no excuse for its noncompliance. Accordingly, the court will grant the plaintiff's motion and strike the defendant's June 5, 2000 response to the plaintiff's objections. The court has performed its *de novo* review of the case without the benefit of the defendant's responses.

## VIII.

For the foregoing reasons, the Magistrate's report and recommendation shall be accepted in part and rejected in part. The defendant's motion for summary judgement with respect to Counts Nine and Ten shall be denied, except that summary judgment shall be granted in favor of the defendant with respect to any remaining allegations of Title VII violations for failure to promote. The defendant's motion for summary judgment as to Counts Four and Five shall be denied. The defendant's motion for summary judgment shall be granted in part and denied in part as to Count Six, negligent supervision/retention and Count Seven, negligent/intentional infliction of emotional distress. The plaintiff's motion for summary judgment on Counts Four, Five, Six, Nine and Ten shall be denied in its entirety. The plaintiff's motion to strike the defendant's responses to the plaintiff's objections to the report and recommendation shall be granted.

An appropriate Order shall this day enter.

## *ORDER*

Before the court is the presiding United States Magistrate Judge's May 3, 2000 Report and Recommendation on the par-

ties' cross motions for summary judgment. The parties have filed objections and responses thereto. Accordingly, the court has performed a *de novo* review of the Magistrate's report and recommendation. *See* 28 U.S.C. § 636(b)(1)(C). The plaintiff has also filed a motion to exclude the Town of Front Royal's ("the defendant") June 5, 2000 responses to the plaintiff's objections to the report and recommendation. Upon thorough consideration of the report and recommendation, all relevant memoranda of the parties, the entire record, and the applicable law, and for the reasons stated in the accompanying Memorandum Opinion, it is accordingly this day

### ADJUDGED ORDERED AND DECREED

as follows:

(1) The Magistrate Judge's Report and Recommendation shall be, and hereby is, ACCEPTED in part and REJECTED in part, consistent with the accompanying Memorandum Opinion.

(2) The defendant's motion for summary judgement shall be, and hereby is, DENIED as to Counts Four, Five, Six, Seven, Nine and Ten, except as explicitly stated in the accompanying Memorandum Opinion, whereby the defendant's motion for summary judgment shall be, and hereby is, GRANTED in part on Counts Six, with respect to negligent supervision, Seven, with respect to negligent infliction of emotional distress, and Nine, with respect to any Title VII claims of failure to promote.

(3) The plaintiff's motion for summary judgment on Counts Four, Five, Six, Nine, and Ten shall be, and hereby is DENIED.

(4) The plaintiff's June 12, 2000 motion to exclude the defendant's responses shall be, and hereby is GRANTED.

(5) The defendant's June 5, 2000 Response to Plaintiff's Objections shall be, and hereby is, STRICKEN from the record.

(6) The above-captioned case shall be, and hereby is, REFERRED to United States Magistrate Judge B. Waugh Crigler, consistent with the court's order dated April 12, 1999.

The Clerk of the Court hereby is directed to send a certified copy of this Order and the accompanying Memorandum Opinion to all counsel of record and Magistrate Judge Crigler.