COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Raphael and Frucci
Argued at Arlington, Virginia

ALEXIS MAYES

MEMORANDUM OPINION* BY
v.      Record No. 1064-23-4      JUDGE STEVEN C. FRUCCI
OCTOBER 1, 2024

CATALYST OPERATIONS &
  ANALYTICS, LLC, ET AL.

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
James P. Fisher, Judge

Michael D. Reiter (Michael E. Duncanson; ChasenBoscolo Injury
Lawyers, on brief), for appellant.

Neil J. MacDonald (MacDonald Law Group, LLC, on brief), for
appellee Catalyst Operations & Analytics, LLC.

Harrison J. Clinton (Richard C. Sullivan, Jr.; Bean, Kinney &
Korman, P.C., on brief), for appellee Applied Fundamentals
Consulting, LLC.

No brief or argument for appellee Marc C. Gibson.

Alexis Mayes appeals the final order granting judgment against Marc C. Gibson and

alleges the circuit court erred in granting the demurrers and dismissing Catalyst Operations &

Analytics, LLC ("Catalyst") and Applied Fundamentals Consulting, LLC ("Applied") from her

personal injury suit. Mayes argues that her amended complaint pleaded sufficient facts to

proceed on vicarious liability claims and negligent hiring claims against both Catalyst and

Applied. Finding no error, this Court affirms the circuit court's judgment.

_____

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

UNPUBLISHED

BACKGROUND

In reviewing a circuit court's decision on a demurrer, we "accept as true all factual allegations expressly pleaded in the complaint" and interpret them "in the light most favorable to the plaintiff." *Taylor v. Aids-Hilfe Koln e.V.*, 301 Va. 352, 357 (2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)). We also accept any factual allegations that "fairly can be viewed as impliedly alleged or reasonably inferred from the facts [expressly] alleged." *Hooked Grp., LLC v. City of Chesapeake*, 298 Va. 663, 667 (2020) (quoting *Welding, Inc. v. Bland Cnty. Serv. Auth.*, 261 Va. 218, 226 (2001)). "But we are not bound by the pleader's conclusions of law that are couched as facts." *Wright v. Graves*, 78 Va. App. 777, 781 (2023). We also "disregard allegations that 'are inherently impossible[] or contradicted by other facts pleaded' and reject 'inferences [that] are strained, forced, or contrary to reason.'" *New Age Care, LLC v. Juran*, 71 Va. App. 407, 429 (2020) (second alteration in original) (quoting *Parker v. Carilion Clinic*, 296 Va. 319, 330 & n.2 (2018)). "Our recitation of the facts, of course, restates only factual allegations that, even if plausibly pleaded, are as yet wholly untested by the adversarial process." *A.H. ex rel. C.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 614 (2019).

In 2018, Mayes worked for Catalyst "and/or" Applied.[1] At that time, Gibson also worked for Catalyst "and/or" Applied as an "agent, employee, servant and/or contractor." Catalyst and Applied are both government contractors "specializing in global counter-intelligence security issues."

In October of 2018, both Catalyst and Applied sent a group of its "supervisors, project leads, co-workers, agents, employees, servants, and/or contractors" on a work trip to Boston,

---

[1] When referring to Mayes's and Gibson's employment, we will refer to their employer(s) as Catalyst "and/or" Applied, as it is pled. On the other hand, when referring to Catalyst and Applied as parties on appeal, we will refer to them as Catalyst and Applied.

Massachusetts "to conduct countersurveillance." After a work meeting during that trip, "some" of the persons working for Catalyst "and/or" Applied met for dinner and drinks at the Renaissance Boston Waterfront Hotel. While there, Mayes fell ill. Gibson took Mayes back to her room, and another "coworker and/or supervisor" of Catalyst "and/or" Applied checked on Mayes while Gibson was still present in Mayes's room. Gibson and the other person left Mayes in her room, but before he left, Gibson also took Mayes's room keycard without her permission. Gibson returned to Mayes's room in the early morning hours and sexually assaulted her. Gibson also took nude photographs of Mayes without her consent. Gibson was subsequently charged, convicted, and sentenced for these actions.[2] Mayes alleged that "Gibson acted with a sinister or corrupt motive such as hatred, personal spite, ill will, or a desire to injure" Mayes, and that his actions "constituted actual malice . . . with a willful and wanton disregard for [Mayes's] rights."

All "supervisors, project leads, co-workers, agents, servants, and/or employees" of Catalyst "and/or" Applied are required to have security clearances. Mayes alleged in her amended complaint that Gibson "had a history of alcohol abuse and drinking issues," that he had a "history of gambling issues," that he had previously been fired from a security related job, and that he had lost his security clearance and had already been barred from multiple security industry contracts. She also alleged that Gibson "had a history of assaulting [a] 15-year old girl" and "had a history of abusing and threatening his ex-girlfriend." Mayes asserted that Catalyst "and/or" Applied "knew or should have known" of Gibson's issues, that Gibson "did not and/or should not have had the necessary security clearance" for employment by Catalyst "and/or" Applied, and that Catalyst "and/or" Applied "willfully and wantonly disregarded that knowledge allowing him to work for them" and go on a work trip with other Catalyst "and/or" Applied

_____

[2] At the time Mayes filed her amended complaint, Gibson was actively serving a prison sentence.

employees "and/or" contractors. Mayes then alleged that Catalyst and Applied were both vicariously liable as Gibson's employers for his actions and were also negligent in hiring and retaining Gibson.

Catalyst and Applied filed demurrers, alleging that the facts pleaded failed to establish vicarious liability, negligent hiring, and negligent retention. In addition, they argued that the use of "and/or" to describe the working relationship between Mayes, Gibson, and the employers was insufficient liability notice as to either Catalyst or Applied. After a hearing, the circuit court granted the demurrers "for the reasons stated in the arguments presented by Defendants." By order of May 26, 2023, Mayes received default judgment against the remaining defendant, Gibson, for his failure to respond to discovery. Mayes now appeals and argues that the demurrers were improperly granted.[3]

ANALYSIS

I. *The claim of Assignment of Error 1 was not timely objected to and is thereby waived.*

In Mayes's first assignment of error, she argues that the circuit court erred by not explaining why it was accepting the arguments presented by Catalyst and Applied as a basis of its ruling. However, we find that Mayes failed to preserve this issue for appellate review. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). "Specificity and timeliness

---

[3] Catalyst and Applied, in brief and by motion, allege that this Court should dismiss the appeal because Mayes's assignments of error and notice of appeal are deficient. Finding both are sufficient, we deny the motions to dismiss and address the merits of Mayes's claim.

undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made *in time to do something about it*." *Id.* (third emphasis added) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). Virginia circuit court judges are a resilient lot; a specific and timely objection will often result in judicial self-correction by making rulings that protect the litigants from potential error in real time, thereby eliminating even the need for an appeal. *See Brown v. Commonwealth*, 279 Va. 210 (2010).

Mayes failed to raise the objection noted above at a time when the circuit court could address the claims and take any necessary corrective action. Accordingly, Mayes failed to preserve these issues for appellate review. Rule 5A:18. Although there are exceptions to Rule 5A:18, Mayes has not invoked them, and we do not do so sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).

II. *The amended complaint failed to state a claim of vicarious liability or negligent hiring and retention against Catalyst and Applied.*

Mayes asserts that her amended complaint pleaded sufficient notice of liability to Catalyst and Applied and that the facts pleaded established a dispute as to Catalyst and Applied's vicarious liability and negligent hiring. Assuming without deciding that Catalyst and Applied had sufficient notice of liability, notwithstanding the gratuitous use of "and/or" in describing the employer-employee relationship,[4] this Court finds that Mayes failed to plead sufficient facts to establish vicarious liability or negligent hiring and retention against Catalyst and Applied and affirm the circuit court's judgment.

---

[4] The Supreme Court of Virginia has stated "that 'and/or' is an 'unfortunate hybrid' and 'a drafting blemish' because '[t]he literal sense of and/or is "both or either,"' providing three possible choices: one, the other or both." *A.H.*, 297 Va. at 614 n.3 (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 125 (2012)).

"This Court reviews a circuit court's decision to sustain a demurrer de novo." *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 264 (2021). "A demurrer tests the legal sufficiency of the facts alleged in a complaint assuming that all facts alleged therein and all inferences fairly drawn from those facts are true." *Id.* We further "interpret those allegations in the light most favorable to the plaintiff." *Taylor*, 301 Va. at 357 (quoting *Coward*, 295 Va. at 358). "Two important limitations on this principle, however, deserve emphasis." *Patterson v. City of Danville*, 301 Va. 181, 197 (2022) (quoting *Doe ex rel. Doe v. Baker*, 299 Va. 628, 641 (2021)). This Court "accept[s] as true unstated inferences to the extent that they are *reasonable*, [but] we give them no weight to the extent that they are *unreasonable*. The difference between the two turns on whether 'the inferences are strained, forced, or contrary to reason,' and thus properly disregarded as 'arbitrary inferences.'" *Id.* (quoting *Coward*, 295 Va. at 358-59). "Second, we must distinguish allegations of historical fact from conclusions of law. We assume the former to be true *arguendo*, but we assume nothing about the correctness of the latter because 'we do not accept the veracity of conclusions of law camouflaged as factual allegations or inferences.'" *Id.* (quoting *Coward*, 295 Va. at 359).

## A. Vicarious Liability

Mayes first asserts that her pleading was sufficient to allege vicarious liability against Catalyst and Applied because it asserted that the assault occurred during an "ongoing counter-surveillance work assignment." She asserts that when Gibson took her to her room, he was acting within the scope of his employment because the work project "would continue into the next day." She further argues that there was a dispute of material fact and a jury should have decided whether Catalyst and Applied were vicariously liable for Gibson. We disagree.

Under "the doctrine of *respondeat superior*, an employer is liable for the tortious acts of its employee if the employee was performing his employer's business and acting within the

scope of his employment when the tortious acts were committed." *Plummer v. Center Psychiatrists, Ltd.*, 252 Va. 233, 235 (1996). "The test of liability is not the motive of the employee in committing the act complained of, but whether that act was within the scope of the duties of employment and in the execution of the service for which he was engaged." *Id.* at 236-37 (quoting *Com. Bus. Sys. v. Bellsouth*, 249 Va. 39, 45 (1995)).

"[W]hen the complaint alleges that the employee committed a tort in the context of their employment, such allegations create 'a rebuttable presumption that facts exist (though not specifically pleaded) that would satisfy the "established test" for vicarious liability . . . .'" *Baker*, 299 Va. at 647 (quoting *Parker v. Carilion Clinic*, 296 Va. 319, 341 (2018)). Then, "the burden is on the [employer] to prove that the [employee] was *not* acting within the scope of his employment when he committed the act complained of, and . . . if the evidence leaves the question in doubt it becomes an issue to be determined by the jury." *Plummer*, 252 Va. at 235 (alterations in original) (quoting *Kensington Assocs. v. West*, 234 Va. 430, 432-33 (1987)). But "[a] plaintiff can plead herself out of court by affirmatively alleging facts that rebut the presumption implied in law—no differently than a litigant at trial can rely on an evidentiary presumption and yet assert facts that undermine it."[5] *Baker*, 299 Va. at 648 (alteration in original) (quoting *Parker*, 296 Va. at 341). "For this 'self-refutation' to work, however, it 'must be clear, not conjectural and irrefutable rather than debatable.'" *Id.* (quoting *Parker*, 296 Va. at 341).

The plaintiff in *Plummer* alleged vicarious liability against a psychologist's employer after the psychologist sexually assaulted her during a counseling session. *Plummer*, 252 Va. at

---

[5] This issue was recently addressed by this Court in *H.C. v. Potomac Hosp. Corp. of Prince William*, 81 Va. App. 1, 18-19 (2024), wherein we held, under unique facts much more challenging than the facts in this case, that the record supported the circuit court's ruling that a sexual assault occurring during working hours was not within the scope of employment.

234-35. The Supreme Court of Virginia held that the act was within the psychologist's scope of employment because he used his "education, experience, and knowledge" as the victim's psychologist to overcome her will and that he committed the assault "while he was performing his duties as a psychologist in the execution of the services for which he was employed." *Id.* at 237. The Supreme Court of Virginia determined that "there simply [were] not sufficient facts which would permit us to hold, as a matter of law, that the defendant has met its burden of showing that its employee was *not* acting within the scope of his employment." *Id.*

The Supreme Court of Virginia addressed the issue again in *Baker*, when a religious leader employed by a church sexually assaulted a minor in the leader's home "under the guise of offering spiritual advice and comfort." *Baker*, 299 Va. at 639-40. The minor sued the employer church under a theory of vicarious liability. *Id.* at 640. The Supreme Court of Virginia held that because the religious leader was employed as a "spiritual advisor" that "regularly offered physical gestures of comfort to his advisees" as part of his work, the pleading survived demurrer on vicarious liability. *Id.* at 650-51. Similarly, when a nursing home employee sexually assaulted a resident while he "undertook to provide care to" the victim as part of his work responsibilities, the Supreme Court of Virginia held that the plaintiff's complaint against the nursing home could proceed on vicarious liability. *Our Lady of Peace, Inc. v. Morgan*, 297 Va. 832, 844-50 (2019) (holding that the pleading "barely" survived demurrer).

Unlike the cases cited above, the facts pleaded in Mayes's amended complaint rebut the presumption of employer vicarious liability. Both Gibson and Mayes, along with a "group of security consultants, agents, employees, servants, and/or contractors working for . . . Catalyst and/or . . . Applied Fundamentals," were in Boston for a work trip on October 17, 2018. There was a work meeting that day at the Renaissance Boston Waterfront Hotel. *After* the meeting, "several members of the group," including Gibson and Mayes, "convened for dinner and drinks."

After Mayes fell ill, Gibson led Mayes to her room. Gibson left the room and took Mayes's keycard without her knowledge. He returned to her room in the early hours and sexually assaulted her. There is no indication in the amended complaint that any of Gibson's actions after the work meeting—the dinner and drinks, leading Mayes to her room, stealing her keycard, and later sexually assaulting her—related to any of his job responsibilities. The amended complaint pleaded no facts that Gibson used any specific work-related skill or opportunity to assault Mayes. Mayes's own pleading therefore established that Gibson's conduct took place entirely outside the work context.

On appeal, Mayes focuses on Gibson's employment status with Catalyst and Applied and argues that a rebuttable presumption of vicarious liability existed based on her asserted employer-employee relationship. She argues that because the parties contest whether the assault was committed within the scope of Gibson's employment, it should be a jury issue. But based on the facts Mayes alleged in her pleading, such an inference would be "strained, forced, or contrary to reason." *Patterson*, 301 Va. at 197 (quoting *Coward*, 295 Va. at 359). Unlike *Plummer*, *Baker*, and *Our Lady of Peace, Inc.*, the facts Mayes alleged in the amended complaint established that Gibson was not performing his job duties or taking advantage of his employment position when he committed the sexual assault. Her pleading therefore failed to state a claim of vicarious liability against Catalyst and Applied.[6]

### B. Negligent Hiring and Retention

Mayes next asserts that her amended complaint alleged sufficient facts to support a claim of negligent hiring and retention. She asserts her pleading was sufficient to show that Catalyst

_____

[6] Mayes also relies on a request for admission to Gibson in which Gibson "admitted" that he committed his assault within the scope of his employment. Even if this Court could consider a discovery response in evaluating a demurred complaint, we are not constrained by Gibson's conclusions of law, especially as to Catalyst and Applied disputing that conclusion. *Patterson*, 301 Va. at 197 (quoting *Coward*, 295 Va. at 359).

and Applied should have known that the work group including women would participate in dinner and alcohol events and that Gibson's history was an apparent risk. We disagree.

The independent tort claims of negligent hiring and negligent retention "involve claims of direct, not indirect, liability and are separate from respondeat superior claims." *A.H.*, 297 Va. at 627. Negligent hiring is when "one who conducts an activity through employees is subject to liability for harm resulting from the employer's conduct if the employer is negligent in the hiring of an improper person in work involving an unreasonable risk of harm to others . . . ." *Id.* (quoting *Southeast Apts. Mgmt., Inc. v. Jackman*, 257 Va. 256, 260 (1999)). An employer is so negligent "in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, because of the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others." *Id.* (quoting *Jackman*, 257 Va. at 260). "[T]he plaintiff must show that an employee's propensity to cause injury to others was either known or should have been discovered by reasonable investigation." *Id.* (alteration in original) (quoting *Majorana v. Crown Cent. Petroleum Corp.*, 260 Va. 521, 531 (2000)). "'[T]he inquiry is focused on whether the specific danger that ultimately manifested itself,' here a sexual battery, 'reasonably could have been foreseen at the time of hiring.'" *Baker*, 299 Va. at 645 (quoting *Malicki v. Doe*, 814 So.2d 347, 362 (Fla. 2002)).

As opposed to negligent hiring, "a claim for negligent retention exists 'for harm resulting from the employer's negligence in retaining a dangerous employee who the employer knew or should have known was dangerous and likely to harm [others]." *A.H.*, 297 Va. at 629 (alteration in original) (quoting *Jackman*, 257 Va. at 260-61). The facts "must show that the employer was negligent in failing to terminate the dangerous employee." *Id.* (internal citations omitted).

In *A.H.*, the victim's complaint only asserted "that the church defendants had become aware of an allegation of [prior] sexual abuse" and failed to assert that the church defendants "knew or should have known of such propensities." *Id.* at 628. The complaint therefore failed to plead sufficient facts to support negligent hiring. *Id.* Because of the lack of specifics as to how the investigation of the vague sexual abuse claim was resolved, the complaint also did not establish a claim of negligent retention. *Id.* at 629-30.

In *Baker*, the defendant church had notice at the time of hiring the pastor that he previously had "an inappropriate relationship with a young girl when he was a pastor in Marion, Virginia," and that he engaged in "inappropriate behavior toward women while he served as a Church of God pastor in Charlottesville, Virginia." *Baker*, 299 Va. at 645. But the complaint did *not* allege that any of the "inappropriate" behavior alleged was specifically *sexual* in nature. *Id.* The Supreme Court of Virginia held that because the allegations did not specify that the prior behavior constituted sexual offenses, unsubstantiated or otherwise, that the complaint did not state a claim for negligent hiring for a subsequent sexual battery. *Id.* at 645-46.

After the church hired the pastor, however, the pastor engaged in a worsening pattern of known sexual harassment and batteries against women. *Id.* at 636-39. He then retired, but the church permitted him to continue as "an agent, volunteer, and/or employee" of the church "and serve as a spiritual leader to certain former congregation members." *Id.* at 639. After his retirement, he assaulted the plaintiff using his position as a "spiritual leader." *Id.* The Supreme Court of Virginia held that these pleaded facts stated a sufficient claim for negligent hiring and retention after his retirement, because the church knew of the *sexual* offenses that occurred before he retired. *Id.* at 646.

Mayes's claim of negligent hiring fails for the reasons set forth in *Baker*. Mayes alleged facts that had no connection to the ultimate harm, including her assertions that Gibson had "a

- 11 -

history of alcohol abuse and drinking issues," a "history of gambling issues," lost his security clearance, been barred from multiple security contracts, and previously been fired from a security related job. None of these facts would place an employer on notice that a prospective employee was at-risk of specifically committing rape. Mayes alleged in the amended complaint that Gibson had a history of "assaulting [a] 15-year old girl" and "abusing and threatening his ex-girlfriend." Despite these allegations, Mayes does not claim that Gibson had sexually assaulted either the teenage girl or his ex-girlfriend or that he had a propensity to sexually assault female employees. The mere allegation of inappropriate behavior or an inappropriate relationship does not give rise to hiring negligence for subsequent sexual abuse.

Although Mayes makes a claim for negligent retention, she pleaded no facts that Gibson engaged in any behavior after he was hired that would put Catalyst and Applied on notice as to his risk. Therefore, the amended complaint failed to state a claim of both negligent hiring and negligent retention.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*